**NATIONAL FOUNDERS CORPORATION,**
Appellant,

v.

**CENTRAL NATIONAL BANK et al.,**
Appellees.

No. 992.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

March 12, 1975.

Rehearing Denied April 2, 1975.

Richard Ewing, David J. Nagle, Houston, for appellant.

Joseph L. Tita, Jerry Mabry, Tita, Lackshin & Nathan, Fletcher Etheridge, Hayden Burns, Butler, Binion, Rice, Cook & Knapp, Houston, for appellees.

COULSON, Justice.

This is a summary judgment case. The plaintiff, National Founders Corporation, appealed from an interlocutory summary judgment entered the 15th day of October, 1973, granting the motion for summary judgment of the defendants, Fred Armstrong and the American Capital Insurance Company, and a final summary judgment entered December 7, 1973, on the motion for summary judgment of the defendants, Central National Bank of Houston and John N. Hunt.

The appellant National Founders Corporation, as plaintiff, in its third amended original petition named as defendants the Central National Bank, John N. Hunt, the American Capital Insurance Company, and Fred Armstrong. National Founders Corporation sought to recover damages under alternative theories of conspiracy, breach of a fiduciary obligation, constructive trust, fraud, and tortious interference with business relationships.

Thomas Collins organized and developed Production National Life Insurance Company (hereafter P. N. C.). Thomas Collins died in 1962, leaving his 20% of the stock in P. N. C. to his wife Louise Collins. After the death of Thomas Collins, Wade Campbell assumed management of P. N. C. Thereafter, Louise Collins divested herself of approximately one-half of her stock holdings in P. N. C. resulting in her owning approximately 10% of the outstanding shares of P. N. C. Louise Collins was dissatisfied with the management of P. N. C. and requested Warren Fleming to assist her in an effort to alter its management. Negotiations between Louise Collins and the management of P. N. C. failed to establish conditions acceptable to her. A proxy fight resulted in which the Collins alliance failed in its effort to take over the management of P. N. C.

National Founders Corporation (hereafter N. F. C.) was formed by Fleming as an instrument in the proxy fight with P. N. C. Louise Collins transferred all of her

shares of stock in P. N. C. to N. F. C. in exchange for forty-five percent of the outstanding stock of N. F. C. In order to pay off debts incurred during the proxy fight, N. F. C., through its president, Warren Fleming, borrowed $25,000 from the Central National Bank on November 5, 1964. The P. N. C. stock which Louise Collins had transferred to N. F. C. for forty-five percent of the outstanding stock of N. F. C. was pledged to the Central National Bank as security for the loan.

Central National Bank extended the original loan on seven different occasions and made additional advances to N. F. C. until the original $25,000 loan became $65,000. The last N. F. C. promissory note payable to Central National Bank was dated September 2, 1965, and was in the sum of $65,000 payable on or before thirty days after date. The said note was executed by Warren M. Fleming, individually and as president of N. F. C. The said note was secured by the pledge by N. F. C. of its 46,572 shares of stock in P. N. C. Corporation.

During the period from November 5, 1964, through September 2, 1965 Warren M. Fleming, as president of N. F. C., attempted to arrange a favorable merger between P. N. C. and one of several other small insurance companies. N. F. C. contends that American Capital Insurance Company and its president, Fred Armstrong, were interested in merging with P. N. C. but were looked upon with disfavor by Warren M. Fleming and Louise Collins.

John N. Hunt, president of Central National Bank, stated under oath that on September 2, 1965, he notified Warren M. Fleming that the $65,000 note of N. F. C. and Warren M. Fleming would be called on October 2, 1965, and that no further extensions would be granted. The note was not paid when it became due on October 2, 1965. Warren M. Fleming requested further delay in the payment of the note in order to either arrange a merger or move the loan to another bank. Central National Bank did not attempt to collect on the note until early December 1965, when it notified Warren M. Fleming and N. F. C. that the note was past due and that the collateral would be sold on December 15, 1965.

On the morning of December 15, 1965, a representative of the stockholders of N. F. C. tendered a check for the past due interest on the $65,000 note and requested that the sale of the collateral be delayed. This tender was rejected by John N. Hunt, as an officer of Central National Bank, and 46,572 shares of stock in P. N. C. were offered for sale pursuant to the collateral security agreement of N. F. C. In the course of the bidding, an offer of $2.90 per share was received and rejected by John N. Hunt. When the bidding was reopened, an offer of $3.10 per share was received from Robert Grantham and accepted by the Central National Bank. The total sales price of the stock was $144,373.20 of which $74,603.86 was paid by the Central National Bank to N. F. C. after deducting the principal of the note, accrued interest, and attorney's fees.

Robert Grantham obtained the $144,373.-20 for the purchase of the 46,572 shares of stock in P. N. C. through a loan from the Republic National Bank of Dallas. The loan was guaranteed by Fred Armstrong. Two days after the sale, Fred Armstrong addressed a letter to Robert Grantham offering to purchase the shares at a price not to exceed $150,000. The sale was thereafter made by Robert Grantham to Fred Armstrong for the total sum of $147,856.-80. Fred Armstrong was the president of American Capital Insurance Company and a director of the Central National Bank.

In June of 1966, American Capital Insurance Company and Production National Life Insurance Company merged.

On November 30, 1966, N. F. C. filed its original petition naming as defendants the Central National Bank and Paul L. Malloy, a vice-president of the Central National Bank. The plaintiff's original petition al-

leged that the defendant, Central National Bank, had violated its obligation as trustee in selling the 46,572 shares in P. N. C. for $3.10 per share. N. F. C. contended that the shares had a value in excess of $5.10 per share. N. F. C. further alleged that the trustee had sold more shares of stock than was necessary to discharge the indebtedness owing to the Central National Bank.

On May 2, 1968, N. F. C. filed its first amended original petition naming as defendants the Central National Bank, John N. Hunt, the American Capital Insurance Company, and Fred Armstrong. Paul L. Malloy was not named as a party in said amended petition or any other subsequent pleadings. The basis of the plaintiff's first amended original petition, and all subsequent pleadings of the plaintiff, was an alleged civil conspiracy between Fred Armstrong, American Capital Insurance Company, John N. Hunt and the Central National Bank to defraud N. F. C. of its interest in P. N. C. In support of the allegation of conspiracy, N. F. C. points to several factors. It is alleged that Fred Armstrong was at all times a director of Central National Bank; that Fred Armstrong served on the Loan Committee of Central National Bank during the relevant time period; and that there arose a fiduciary obligation upon both the Central National Bank and Fred Armstrong as a result of the pledge by N. F. C. of its 46,572 shares of stock in P. N. C. N. F. C. also contends that the prior display of interest by American Capital Insurance Company in P. N. C., the use of Robert Grantham as a "straw man" in the purchase of the P. N. C. shares, and the complicity of the Central National Bank in arranging the purchase money for Grantham through the Republic National Bank of Dallas all support the allegation of conspiracy. Finally, N. F. C. alleges that the 46,572 shares of stock in P. N. C. represented ten percent of P. N. C.'s outstanding capital stock, represented an effective control block on the issue of merger, and that such fact was known by the defendants who, by fraud, sought to divest N. F. C. of such right of control at less than the actual market value of such right of control.

The defendants, in answer to the plaintiff's numerous petitions, pled that the claims of N. F. C. were barred by the two year statute of limitations, and alternatively, that N. F. C. failed to allege facts giving rise to a cause of action.

The claims asserted by N. F. C. are governed by Vernon's Tex.Rev.Civ.Stat.Ann. art. 5526 (1958). Quinn v. Press, 135 Tex. 60, 140 S.W.2d 438 (1940) (fraud); Couch v. Sparger, 252 S.W. 817 (Tex.Civ. App.-San Antonio 1923, no writ) (resulting trust); Andes v. Cagle, 468 S.W.2d 513 (Tex.Civ.App.-Houston [14th Dist.] 1971, writ ref'd n. r. e.) (conversion); International Bankers Life Ins. Co. v. Holloway, 368 S.W.2d 567 (Tex.Sup.1963) (breach of a fiduciary obligation); Linkenhoger v. American Fidelity & Casualty Co., Inc., 152 Tex. 534, 260 S.W.2d 884 (1953) (general tort action). The original petition of N. F. C. was filed on November 30, 1966, and named as defendants Central National Bank and Paul L. Malloy. N. F. C.'s first amended original petition was filed on May 2, 1968, and dropped Paul L. Malloy as a defendant while adding as defendants John N. Hunt, Fred Armstrong, and the American Capital Insurance Company. The damages alleged by N. F. C. were sustained on December 15, 1965, the date of the sale of the 46,572 shares of stock in P. N. C. by Central National Bank. It is contended by N. F. C. that the statute of limitations did not begin to run against its interests for a year and seven months after the date of the sale of said pledged stock because of the efforts made by the defendants to conceal the transactions which the plaintiff contends constitute the conspiracy to commit fraud.

The summary judgment evidence shows that as a matter of law N. F. C.'s suit against American Capital Insurance Company, Fred Armstrong, and John N. Hunt was barred by Tex.Rev.Civ.Stat.Ann. art. 5526, the two year statute of limitations.

It is undisputed that on February 15, 1966, Louise Collins and her daughter, Iris C. Eaton, became members of the board of directors of N. F. C. The depositions of Louise Collins and Iris C. Eaton disclose that immediately following the foreclosure sale of the P. N. C. stock on December 15, 1965, they were informed that American Capital Insurance Company had purchased the stock. The specific details were not known to them; however, they were on constructive notice of the role played by the defendants in the transfer. During her deposition Iris C. Eaton was asked:

Q. So what you knew about it was you knew that Grantham bought the stock on the day of the foreclosure. There was no doubt in your mind that American Capital was buying it?

A. Oh, yes. There may have been some doubt, but with Mr. Armstrong on the board there wasn't too much.

In the course of her deposition, Louise Collins was asked:

Q. When Mr. Brown [a nephew employed by P. N. C.] told you that the loans had been called, what all did he tell you, Mrs. Collins?

A. He told me American Capital got the company. I didn't know what he was talking about. That it had been auctioned to a very big shot.

Q. And that was the day of the foreclosure sale?

A. Right after the auction.

Q. Yes Ma'am. And he called you up and told you that American Capital had gotten the company?

A. Yes.

■ Fraud will prevent the running of the statute of limitations until it is discovered, or until a reasonably diligent person should have discovered it. Port Arthur Rice Milling Co. v. Beaumont Rice Mills, 105 Tex. 514, 143 S.W. 926 (1912). Limitations will begin to run against the interest of a corporation, in spite of fraud, when a director or officer of the corporation has sufficient knowledge of the facts to require that person to exercise diligence in fully uncovering the fraud. International Bankers Life Ins. Co. v. Holloway, *supra* 368 S.W.2d at 580; Reynolds-Southwestern Corp. v. Dresser Indus., Inc., 438 S.W.2d 135 (Tex.Civ.App.-Houston [14th Dist.] 1969, writ ref'd n. r. e.). It was the uncontested testimony of Louise Collins and Iris C. Eaton, two of the directors of N. F. C., that they knew of the involvement of Fred Armstrong, American Capital Insurance Company, and the Central National Bank immediately following the foreclosure sale of the 46,572 shares of P. N. C. stock on December 15, 1965. This knowledge on the part of Louise Collins and Iris C. Eaton, as members of the board of directors of N. F. C., was sufficient to start the statute of limitations running against N. F. C. on February 15, 1966, the date they became members of the board of directors. Fred Armstrong, American Capital Insurance Company, and John N. Hunt were first named as defendants on May 2, 1968, in the first amended original petition of N. F. C. alleging the tort of civil conspiracy to interfere with a business relationship to the detriment of N. F. C. Such claims and causes of action in tort asserted against these defendants were barred by the two year statute of limitations.

■ The Central National Bank was named as a defendant in the plaintiff's original petition filed on November 30, 1966. The two year statute of limitations will not protect Central National Bank in this suit.

Central National Bank contends that the summary judgment in its favor was properly granted because N. F. C. failed to raise any issue of material fact which would support a cause of action against the Central National Bank.

■ Under the rules governing motions for summary judgment the trial court must accept as true all evidence of the opponent to the motion and ignore all conflicting evidence. Texas Rules of Civil Procedure, rule 166-A; Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929 (1952). N. F. C. alleged that the Central National Bank, while under a fiduciary obligation to N. F. C., entered into a conspiracy to divest N. F. C. of its 46,572 shares of stock in P. N. C., together with the valuable rights and benefits related thereto, for less than the fair value of such stock and rights. Where conspiracy is involved, the defendant-movant in a summary judgment hearing bears a negative burden of proving the absence of conspiracy. *See* Cheatwood v. Jackson, 442 S.W.2d 789 (Tex.Civ.App.-Houston [14th Dist.]), writ ref'd n. r. e. per curiam, 445 S.W.2d 513 (Tex.Sup.1969); Stockton v. Summers, 504 S.W.2d 637 (Tex.Civ. App.-Houston [14th Dist.] 1974, no writ).

■ The summary judgment evidence in this case will not support the judgment entered on behalf of the Central National Bank. Unlike the case of St. Joseph Pro. Bldg. Co. v. New York Life Ins. Co., 449 S.W.2d 848 (Tex.Civ.App.-Houston [14th Dist.] 1970, writ ref'd n. r. e.), there is summary judgment evidence that the Central National Bank, while acting as a fiduciary of N. F. C., did participate in the sale of the pledged 46,572 shares of stock in P. N. C. with the third party purchasers of the stock. The sale of that stock is alleged to have been detrimental to the best interest of the pledgor, N. F. C. The evidence supporting this allegation is contained in the deposition of an officer of the Republic National Bank of Dallas. That testimony reveals the interlocking loan arrangements made to finance the purchase of the P. N. C. stock. Although the Central National Bank had the right to foreclose on the collateral, the Central National Bank could not lawfully enter into any agreement intended to serve its best interest without regard to the interest of the pledgor, N. F. C. King v. Boerne State Bank, 159 S.W. 433 (Tex.Civ.App.- San Antonio 1913, writ ref'd). At the hearing on the motion of the Central National Bank for summary judgment, the burden was upon the movant to exculpate itself from the charge of conspiracy. It was not the burden of N. F. C., as opponent of such motion for summary judgment, to prove the existence of such a conspiracy. At the trial on the merits it will be N. F. C.'s burden to prove all of the elements of a civil conspiracy in order to prevail. The summary judgment evidence raises inferences sufficient to overcome the affidavits relied upon by the Central National Bank. The affidavits offered by the Central National Bank supporting its motion for summary judgment contain denials of involvement in a conspiracy. Such affidavits are sworn conclusions and are incapable of establishing, as a matter of law, that such a conspiracy did not exist.

■ The Central National Bank argues that N. F. C. has failed to show any harm to its interest other than its unsupported claim that "some control interest" was lost by the foreclosure. The Central National Bank points out that the only evidence concerning the value of the collateral at the time of sale establishes a price between $3.05 and $3.25 per share. However, this contention by the Central National Bank disregards the evidence contained in the depositions of Louise Collins and Iris C. Eaton. Said witnesses testified that there were other insurance companies interested in either the stock of P. N. C. or a merger with P. N. C. The testimony of said witnesses established a potential value of the control block of stock through sale to one of such buyers of approximately $5.00 per share. The movant in a summary judgment proceeding has the burden of proof. The evidence of the party opposing the motion for summary judgment will be accepted as true for the purposes of evaluating the motion. Gulbenkian v. Penn, *supra*. The Central National Bank has not shown as a matter of law by its summary judgment evidence that there was no damage to N. F. C.

by the sale of the 46,572 shares of P. N. C. for $3.10 per share.

The judgment of the trial court is affirmed as to the defendants American Capital Insurance Company, Fred Armstrong and John M. Hunt. The judgment of the trial court is reversed as to the defendant Central National Bank and as reversed is severed and remanded for trial.

Affirmed in part, and reversed in part, and as reversed, severed and remanded.