**Larry FUTERFAS, Appellant,**

v.

**PARK TOWERS, et al., Appellees.**

**No. 05–85–00410–CV.**

Court of Appeals of Texas, Dallas.

Feb. 24, 1986.

Rehearing Denied April 7, 1986.

Timothy E. Kelley, Dallas, for appellant.

Ronald W. Johnson, Touchstone, Bernays, Johnston, Beall & Smith, Clayton E. Devin, Geoffrey C. Graham, Cowles & Thompson, Dallas, for appellees.

Before SPARLING, WHITHAM and DEVANY, JJ.

WHITHAM, Justice.

■ Appellant, Larry Futerfas, appeals from a take-nothing summary judgment in favor of Park Towers, Inc., William R. Hoge, Paul Stotts, Russell H. Perry, David Braden, Howard R. Sluyter, Mrs. Floyd Ramsey, William O. Stevens, George P. McCracken and Mrs. George P. McCracken. In his brief on appeal, Futerfas omits Mrs. George P. McCracken as a named appellee. The appeal bond is payable to the District Clerk as permitted by TEX.R.CIV.P. 354(a) rather than named appellees. Consequently, we deem Futerfas to have waived his right to appeal the take-nothing judgment in favor of Mrs. George P. McCracken and we treat the trial court's judgment in favor of Mrs. McCracken as final. Therefore, the appellees in the present case are Park Towers, Inc., William R. Hoge, Paul Stotts, Russell H. Perry, David Braden, Howard R. Sluyter, Mrs. Floyd Ramsey, William O. Stevens and George P. McCracken. Park Towers is a cooperative apartment building. The other appellees except Perry are residents of the building. Perry is the owner of property adjacent to Park Towers. All of the appellees except Braden join in one brief. Braden filed a separate brief. When referring to all of the appellees, including Braden, we will use the descriptive term "residents." When referring to all of the appellees except Braden, we will use the descriptive term "group residents." When referring to the appellee Braden, we will use the name "Braden."

Futerfas owns improved real estate located a short distance from Park Towers and used by Futerfas' tenant as a night club. This case results from the residents' objections to the night club. Futerfas alleged these causes of action against the residents: (1) wrongful injunction; (2) abuse of process and malicious prosecution; (3) tortious interference with contract; (4) harassment and invasion of privacy; and (5) conspiracy between the residents to accomplish each of the preceding. In his sole point of error, Futerfas contends that the trial court erred in rendering summary judgment for the residents. Except as to Futerfas' cause of action for abuse of pro-

cess and malicious prosecution, we conclude that there are genuine issues of material fact precluding summary judgment as to Futerfas' remaining causes of action. Accordingly, we affirm in part and reverse and remand in part.

### Background

The present case is all that remains of extended litigation. Other parties and claims have exited the stage. This is a story of conflict between homeowners and a neighboring property owner and others over land use. The parties relate their sides of the story in numerous and voluminous depositions which constitute the summary judgment proof. Our reference to "testimony" refers to these depositions. The proof contains undisputed facts, disputed facts, and undisputed facts from which reasonable minds can draw different inferences or conclusions. The mere fact that facts are undisputed does not always eliminate the right to a fact finding. If reasonable minds can draw different inferences or conclusions from undisputed facts, a fact issue is presented. *Commercial Standard Insurance Co. v. Davis*, 134 Tex. 487, 489–90, 137 S.W.2d 1, 2 (1940). We now try to give the reader a sufficient summary of the deposition testimony to understand our disposition of the present case.

In late 1980, Futerfas leased his property to Texas Music & Feed Co., Inc. to operate as a bar and night club. An individual named Will Barnes was to be the main performer in the club. Indeed, the club was named "Will's Barn." Will's Barn had its grand opening on November 17, 1980, and was billed as "Dallas' only real HONKY–TONK" which invited patrons to "come on down and stomp, clap, dance, and get rowdy to the boisterous MUSIC of the WILL BARNES BAND." The patrons did as invited to the dismay of the residents. Almost immediately, the residents complained about noise from Will's Barn. The police visited the club on five separate occasions on November 18. On December 10, the board of directors of Park Towers met

to review the court papers to be filed against Futerfas and others. The petition was read to the board and approved by the board on that date. The lawsuit, however, was not filed until December 30. The residents sought and obtained a temporary restraining order which was served on December 31, New Year's Eve. The application for the temporary restraining order was sworn to by all the residents. Prior to filing this suit, all the residents except Perry had personally experienced excessive and bothersome noise emanating from the club which disturbed their sleep and denied them the quiet enjoyment of their homes. Perry joined in the suit because of his concern that the noise nuisance would affect the value of his property.

The temporary restraining order enjoined Futerfas and others from:

(1) Playing either live or recorded music on the premises in or around the Will's Barn dance hall, 3136b Routh Street, Dallas, Texas, which can be heard outside the four walls of the building located at that address.

(2) Engaging in or allowing any other activity by either occupants or patrons designed to create noise or sound of any type in or around the Will's Barn dance hall, 3136b Routh Street, Dallas, Texas, which can be heard outside the four walls of the building located at that address.

(3) Allowing patrons of the Will's Barn dance hall, 3136b Routh Street, Dallas, Texas, to remove any containers of any beverage from within the four walls of the building located at that address.

(4) Allowing patrons of the Will's Barn dance hall, 3136b Routh Street, Dallas, Texas, to consume alcoholic beverages of any type in the parking lot or other property surrounding the building located at that address.

(5) Allowing patrons of the Will's Barn dance hall, 3136b Routh Street, Dallas, Texas, to deposit beer cans, bottles, cartons and other containers and trash on the parking lot and other property sur-

rounding the building located at that address.

The restraining order expired by its own terms on January 8 pursuant to TEX.R. CIV.P. 680.

Dissatisfied with their civil litigation, Braden, Stevens and McCracken, in late February 1981, met with a group of City of Dallas officials composed of an assistant city manager, an assistant chief of police and attorneys from the city attorney's office. The meeting produced results. On March 12, police raided Will's Barn. Four squad cars appeared at Will's Barn and eight officers entered the club and removed persons to the squad cars. Texas Music then sued the City of Dallas in federal court to restrain their unlawful exercise of police power and harassment of Texas Music. As a result of that lawsuit, the City of Dallas agreed that in the future only one squad car would be dispatched in response to noise complaints at Will's Barn. Near the time of the meeting with the city officials, some residents also turned to the City of Dallas municipal court system. McCracken filed two criminal complaints against Futerfas, and Stevens and Ramsey each filed one against Futerfas. These residents assert that they filed the complaints with one objective in mind—to abate the nuisance inflicted upon them in their homes by Will's Barn. Futerfas admits that he has not been arrested or tried in connection with these complaints.

Persons used the telephone to express their views to Futerfas about the noise emanating from Will's Barn. The only admitted caller was Mrs. McCracken. Mrs. McCracken telephoned Futerfas more than once to complain about the noise. Mrs. McCracken testified that she used the telephone in the following manner. The first time she called she identified herself and said the music was too loud. Futerfas responded that he had nothing to do with the operation of the building. He also yelled at her, but she was not surprised that he was upset because it was 11:00 p.m. She called him several times after that and only identified herself once in these later

calls. She never called him during normal business hours, but usually called him between 1:00 a.m. and 1:30 a.m. She only called him at night because that was when the music was bothering her. Except for the two times when she actually spoke to Futerfas, she would call Futerfas, someone would answer, and then she would hang up. She called to let Futerfas know that the music was still bothering her, but she did not know how Futerfas would be aware of that if she hung up without talking to him. Mrs. McCracken stopped making the telephone calls after a visit by police inquiring about the calls. Mrs. McCracken testified that she made the telephone calls without the knowledge or consent of the residents. Persons other than Mrs. McCracken made some of these telephone calls. Futerfas testified that a man made the first harassing calls. The man would say that he was up and that he wanted to make sure Futerfas was up too, and then the man would hang up. Futerfas reported these telephone calls to the police and the telephone company. The police reported to Futerfas that some of the calls were traced to the McCracken residence. Futerfas testified that he was "getting phone calls every night of the week" and that he "would get two or three or four phone calls a night and people would hang up." Futerfas also stated that the calls started in January 1981 and continued until March or April of 1981. The police told Futerfas the calls were coming from the Park Towers. The telephone calls stopped after the police told Futerfas that they would go to the Park Towers and get the calls stopped. Other than from the McCracken residence, Futerfas does not know who made the telephone calls.

### The Summary Judgment Questions

Each resident filed a separate motion for summary judgment. Futerfas filed a separate response to each motion except as to Stevens' motion. Futerfas did not file a response to Stevens' motion. Futerfas' responses were identical. On appeal both Futerfas and the residents have treated the summary judgment questions before us in

such uniform manner that we may consider the present case as though one motion for summary judgment and one response were filed.

Futerfas argues that the residents' motion for summary judgment should have been overruled because there are genuine issues of material fact as to each of his causes of action that preclude entry of a summary judgment. The group residents insist that summary judgment was properly granted for six reasons. First, Futerfas did not file legally sufficient responses to their respective motions for summary judgment. Second, Futerfas has no cause of action against them for wrongful injunction as a matter of law. Third, Futerfas has no cause of action against them for abuse of process or malicious prosecution as a matter of law. Fourth, Futerfas has no cause of action against them for tortious interference with contractual relations as a matter of law. Fifth, Futerfas has no cause of action against them for harassment and invasion of privacy as a matter of law. Sixth, Futerfas has no cause of action against them for civil conspiracy as a matter of law.

Except as to the group residents' first reason advanced to support the summary judgment, Braden takes a position on appeal similar to that of the group residents. Braden contends that summary judgment was properly granted in his favor for five reasons. First, no cause of action based upon wrongful injunction can exist in favor of Futerfas. Second, Futerfas' alleged cause of action based upon abuse of process and malicious prosecution must fail as no criminal complaints were filed by Braden. Third, no cause of action for interference with contractual relations exists against Braden as the contract in question was fully performed and as Braden was privileged in his actions. Fourth, no cause of action for harassment can be maintained against Braden in this cause as Braden had no involvement with the telephone calls allegedly constituting harassment. Fifth, no recovery can be had against Braden in this cause on a theory of conspiracy as

Braden's limited actions can give rise to no legal liability.

Before addressing the contentions common to both the group residents and Braden, we take up the group residents' first argument in support of the summary judgment. Therefore, we must determine if Futerfas filed legally sufficient responses to the motions for summary judgment.

### The Sufficiency of Futerfas' Responses to the Motions for Summary Judgment

Disposition of this question requires consideration of the supreme court's opinion in *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979), interpreting the language of TEX.R.CIV.P. 166–A(c) reading "[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." Omitting formal parts, we quote Futerfas' response to each motion save Stevens':

### I.

The oral depositions on file herein and which Larry Futerfas respectfully requests the Court to consider upon hearing of this Motion for Summary Judgment, raise issues of fact because Movant does not have uncontroverted testimonial evidence of interested witnesses that is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, which could have been readily controverted. The depositions raise issues of fact as to Movant's participation in the malicious prosecution of Larry Futerfas, abuse of process, tortious interference with Larry Futerfas' contractual relationship with Texas Music & Feed Co., Inc., and the conspiracy to harass Larry Futerfas.

### II.

This pleading is filed to make sure that Rule 166–A is followed in its directness and that certain depositions might be considered and Larry Futerfas would

show that the depositions raise issues of fact as to Movant's liability in this case, and therefore, Movant's Motion for Summary Judgment should be overruled in its entirety.

 The group residents maintain that this response does not preserve the issues raised by Futerfas' causes of action. The group residents argue that this response fails to identify particular depositions and the specific parts of the depositions that raise fact issues and, therefore, is insufficient to preserve the issues advanced by Futerfas. Relying upon *Clear Creek*, the group residents assert that Futerfas' response must fairly apprise them, as movants, and the trial court of the issues Futerfas, as non-movant, contends should defeat the motion for summary judgment. *Clear Creek*, 589 S.W.2d at 678. Thus, the residents insist that Futerfas' response must identify particular depositions and the specific parts of depositions that raise fact issues in order to fairly apprise them and the trial court of the issues. We conclude that the group residents' reliance upon this holding in *Clear Creek* is misplaced. We reach this conclusion in light of the residents' burden of proof in the present case. Futerfas occupies the position of a plaintiff asserting various causes of action in tort against the residents. Futerfas finds himself in the role of a plaintiff because subsequent to the residents' action for injunctive relief, Futerfas filed his own suit alleging the tort actions in question. Upon motion of the residents, Futerfas' suit was consolidated with the residents' action for injunction. Thereafter, the residents, as cross-defendants, filed their motions for summary judgment. Thus, the present case is one in which the residents, as defendants, seek to establish by summary judgment proof that Futerfas, as plaintiff, has no tort causes of action as a matter of law. Therefore, on motion for summary judgment, the residents have the burden of proof, not Futerfas. For this reason, we conclude that the language in *Clear Creek* relied upon by the group residents is inapplicable in the present case. We reach this conclu-

sion in light of other language in *Clear Creek* applicable to the present case.

*Clear Creek* is not to be read as shifting the burden of proof that exists in summary judgment proceedings. *Clear Creek*, 589 S.W.2d at 678. Summary judgments must stand on their own merits, and the non-movant's failure to answer or respond cannot supply by default the summary judgment proof necessary to establish the movant's right. *Clear Creek*, 589 S.W.2d at 678. In the present case, Futerfas does not seek to *avoid* the residents' entitlement to summary judgment by asserting any affirmative burden upon which he relies. Therefore, the present case is not a case in which "the non-movant must expressly present to the trial court any reasons seeking to *avoid* movant's entitlement, such as those set out in rules 93 and 94, and he must present summary judgment proof when necessary to establish a fact issue." *Clear Creek*, 589 S.W.2d at 678 (emphasis in original).

We conclude, therefore, that the present case is not one in which Futerfas seeks to defeat a summary judgment by raising a fact issue for the first time on appeal which was not expressly presented to the trial court. *Clear Creek*, 589 S.W.2d at 679. Instead, the present case is one in which we must determine if the residents themselves have met their burden of proof to show that Futerfas, as plaintiff, has no tort causes of action as a matter of law. Indeed, as pointed out above, the residents contend that the trial court properly granted summary judgment because, as to each alleged tort, Futerfas had no cause of action as a matter of law based on their summary judgment proof. Therefore, under *Clear Creek*, the residents' summary judgments must stand on their own merits and even a failure by Futerfas to answer or respond could not supply by default the summary judgment proof necessary to establish the residents' right to summary judgment. *Clear Creek*, 589 S.W.2d at 678.

Thus, we conclude that under *Clear Creek* we need not determine whether Fu-

terfas' responses to the residents' motions for summary judgment are legally sufficient. We reach this conclusion because Futerfas was not required to file a response to the residents' motions for summary judgment. As pointed out, Futerfas does not seek to avoid the residents' entitlement to summary judgment by asserting any affirmative burden upon which he relies. *Clear Creek*, 589 S.W.2d at 678. In light of our holding that Futerfas was not required to file a response to the residents' motions for summary judgment, it follows, and we so hold, that Futerfas' failure to identify particular depositions and specific parts of depositions in his responses to the motions for summary judgment does not support summary judgments in favor of the residents.

Consequently, we turn to the question of whether the residents have met their burden of proof to show that Futerfas, as plaintiff, has no tort causes of action as a matter of law. The function of the summary judgment is not to deprive a litigant of his right to trial by jury, but to eliminate patently unmeritorious claims and untenable defenses. *Gulbenkian v. Penn*, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952). Thus, we must decide if the residents' summary judgment proof eliminates Futerfas' claims. To that end, we turn to Futerfas' causes of action. The element of damages will be discussed under a separate heading applicable to all causes of action.

### Conspiracy and Harrassment

■ An actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. The essential elements are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983). Where conspiracy is involved, the defendant-movant in a summary judgment hearing bears a negative burden of proving the

absence of conspiracy. *National Founders Corp. v. Central National Bank*, 521 S.W.2d 92, 97 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.). It is not the burden of the plaintiff, as opponent of such motion for summary judgment, to prove the existence of such a conspiracy. *National Founders Corp.*, 521 S.W.2d at 97. The non-moving party has no duty or burden whatsoever in a summary judgment case until the moving party establishes its right to a summary judgment. *Bankers Commercial Life Insurance Co. v. Scott*, 631 S.W.2d 228, 232 (Tex.App.—Tyler 1982, writ ref'd n.r.e.). By their testimony, the residents' attempt to prove the absence of conspiracy by their own words in the present case, and, therefore, their entitlement to summary judgment.

Futerfas maintains that the actions of each and every resident were part and parcel to a conspiracy to unlawfully harass him or otherwise interfere with the peaceful enjoyment of his life. The thrust of the residents' own words on deposition is denial of involvement in this conspiracy. Therefore, we narrow the inquiry to the alleged purpose of the asserted conspiracy to harass Futerfas or otherwise interfere with the peaceful enjoyment of his life. In doing so, we focus on the telephone calls to Futerfas. We do so because the telephone calls are the one activity of the residents which has no admitted participation by any resident and, therefore, stands apart from other actions of the residents. In the case of the telephone calls, each resident testified to the effect that he did not make any of the telephone calls, did not know who made the telephone calls and did not encourage anyone to make the telephone calls. We also focus on the telephone calls because the motivation for harassment could not be proper. While the residents' other actions (e.g. filing of injunction suit) arguably could be innocent, the fact that their combined effort may have included harassing telephone calls sheds light on the possible improper motivation behind each aspect of the combined effort.

No doubt exists that harassing telephone calls are overt, unlawful acts. They are

overt, unlawful acts for at least two reasons. First, they are unwarranted invasions of the right of privacy which constitute a legal injury for which a remedy exists. *See Billings v. Atkinson,* 489 S.W.2d 858, 860 (Tex.1973). They constitute an intrusion upon a person's seclusion or solitude and, therefore, invade privacy. *See National Bonding Agency v. Demeson,* 648 S.W.2d 748, 749 (Tex.App.—Dallas 1983, no writ). *See generally* W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 117 (5th ed.1984) (stating, at page 855, that persistent and unwanted telephone calls have been held to be invasions of privacy). Second, they cause the telephone of another to ring repeatedly or are repeated anonymous telephone communications made in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass or offend another in violation of TEX.PENAL CODE ANN. § 42.07(a)(4) (Vernon Supp.1985). In this connection, the group residents make much of the fact that Futerfas did not appeal as to the one known telephone culprit, Mrs. McCracken. Nevertheless, we conclude that Mrs. McCracken's actions were chargeable to the residents if, indeed, a conspiracy existed between a combination of persons involving Mrs. McCracken and the residents to invade Futerfas' privacy by persistent and unwanted telephone calls. Furthermore, there is evidence of such telephone calls by unknown persons other than Mrs. McCracken. Therefore, we have an unlawful purpose of the alleged conspiracy. Thus, we reach the question of whether the residents' denial of participation in the unlawful purpose based solely on the uncontroverted testimonial evidence of the residents, as interested witnesses, can support summary judgment in favor of the residents.

A summary judgment may be based on uncontroverted testimonial evidence of an interested witness if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted. TEX.R.CIV.P. 166–A(c). In the present case, we must decide if the resi-

dents' testimonial evidence could have been readily controverted. We conclude that the uncontroverted testimonial evidence of the residents denying involvement in the telephone calls could not have been readily controverted. As noted in *Bankers Commercial Life:*

> We do not believe the statements of Godwin or Hulsey that they were unaware of Scott's activities or never had "a meeting of the minds" with Scott and never "intended" to defraud Bankers are proper proof for summary judgment purposes. The affidavits are, in essence, self-serving statements of interested parties of what they knew and intended. In the context of a conspiracy, we believe such issues of intent and knowledge of alleged co-conspirators are not susceptible to being readily controverted and are best left to the determination of the trier of fact.

631 S.W.2d at 231. The very essence of a conspiracy is secret intent of the co-conspirators. *Bankers Commercial Life,* 631 S.W.2d at 231. We fail to see how Futerfas could swear to all facts necessary to controvert the fact that no two or more residents combined to harass him by nighttime telephone calls. Statements that the witnesses did not agree or conspire are not readily controvertible statements, and thus, do not satisfy the requirements of rule 166–A. *American Petrofina v. Crump Business Forms,* 597 S.W.2d 467, 471 (Tex. Civ.App.—Dallas 1980, writ ref'd n.r.e.). Furthermore, we fail to see how Futerfas could swear to all facts necessary to controvert the fact that no resident ever dialed Futerfas' telephone number from any telephone for the purpose of harassment. If a summary judgment rests on the testimony of an interested witness and is of such a nature that it cannot be readily contradicted if untrue, an issue relating to credibility of the witness is presented and summary judgment is improper. *Finger v. Home Insurance Co. of New York,* 379 S.W.2d 950, 952 (Tex.Civ.App.—Houston 1964, no writ), *Nick v. Colonial National Bank of Garland,* 517 S.W.2d 375, 378 (Tex.Civ. App.—Dallas 1974, no writ). Moreover,

summary judgment should not be granted when the issues are inherently those for a jury, as in cases involving intent. 4 R. McDonald, *Texas Civil Practice in District and County Courts* § 17.26.12 (rev.1984).

Consequently, in the present case, we conclude that the issues of intent, knowledge and actions of the residents are not susceptible to being readily controverted and are best left to the determination of the trier of fact. Thus, we conclude that the residents have failed to meet their negative burden of proving the absence of a conspiracy and the absence of harassment. We conclude, therefore, that the residents' interested, self-serving testimony under these circumstances, in and of itself, establishes that genuine issues of fact relating to the residents' credibility as witnesses exist. Accordingly, we conclude further that the trial court erred in granting summary judgment in favor of the residents with respect to Futerfas' claims for harassment and conspiracy. Our reference to the alleged harassment in connection with the alleged conspiracy does not preclude introduction at trial on the merits of evidence of other acts of the residents or Mrs. McCracken in support of Futerfas' cause of action for conspiracy.

### Wrongful Injunction

■ The residents insist that the summary judgment proof conclusively establishes that Futerfas suffered no damages as the result of the temporary restraining order. The residents argue that the proof shows absolutely no changes or modifications in the operation of Will's Barn were made after service of the temporary restraining order on December 31, 1980. The residents' reason, therefore, that Futerfas could have incurred no loss as the result of an alleged wrongful injunction. In support of their argument, the residents' rely upon the testimony of a Dr. Cohen, who organized Texas Music. We quote the testimony of Dr. Cohen to which the residents direct us pertaining to the restraining order period of December 31, 1980 through January 8, 1981:

Q. Were there any changes or modifications in the operation of the club between the 31st and the 8th of January, 1981? [Dr. Cohen]: A. The modifications that were going on, that I described before, may still have been going on. I don't know specifically any new ones that were made before of [sic] or after the injunction of December 31st.

We do not read Dr. Cohen's answer to show absolutely no changes or modifications in the operation of Will's Barn during the period of December 31, 1980, through January 8, 1981. Instead, we interpret Dr. Cohen's response to be that he did not *know* of any such changes or modifications. Lack of knowledge of facts by one witness cannot establish the existence of facts. We conclude, therefore, that the summary judgment proof fails conclusively to establish that Futerfas suffered no damages as the result of the temporary restraining order. Next, we consider whether other genuine issues of fact relating to Futerfas' claim for wrongful injunction exist.

■ The residents voluntarily dismissed their lawsuit against Futerfas, including their application for injunctive relief, on September 4, 1981. The residents' lawsuit against the remaining defendants was compromised and settled and dismissed with prejudice on January 10, 1985. Furthermore, on this record, we conclude that the residents did not actually proceed with their application for a temporary injunction against Futerfas. Thus, the residents' application for injunctive relief terminated in favor of Futerfas because the temporary restraining order expired by its own terms when the residents failed to proceed with their application for a temporary injunction against Futerfas. If the party who obtained the temporary restraining order does not proceed with the application for a temporary injunction the court shall dissolve the temporary restraining order. TEX.R.CIV.P. 680. Indeed, the residents admit that the temporary restraining order against Futerfas expired by its own terms. The group residents tell us in their brief that "Larry Futerfas was the subject of a

temporary restraining order for a period from service of the process on December 31, 1980 until the order expired by its own terms on January 8, 1981." Braden tells us in his brief that "[s]uch temporary restraining order was signed on December 30, 1980, and expired on January 8, 1981."

Consequently, we conclude that the residents had the burden of proof to establish their justification for issuance of the temporary restraining order. We find the residents' burden of proof to establish their justification for issuance of the temporary restraining order by analogy to the holding in *Payne v. Nichols*, 176 S.W.2d 961 (Tex. Civ.App.—Galveston 1943, writ ref'd w.o. m.). In *Payne*, the defendant in a wrongful injunction case voluntarily dismissed his suit after receiving a temporary injunction. *Payne* offers the following analysis which we consider applicable to the present case:

> [I]n an injunction suit [a plaintiff cannot], after obtaining a temporary injunction, ... in anticipation of a damage suit for its wrongful issuance, better his position, or worsen that of his opponent by dismissing his suit. When he has obtained a temporary injunction, a plaintiff has the burden upon the trial of the case upon its merits to justify the issuance thereof, and likewise to justify its perpetuation where he seeks such perpetuation. Therefore, when he pleads a justification as against a suit for damages for its wrongful issuance (where he has voluntarily dismissed such temporary injunction), the rule should be, and doubtless is, that he has the burden of proof on his justification. In other words, in a suit for damages in such case, by introducing proof of the dismissal of the temporary injunction, the plaintiff thereby, in the suit for damages, makes out a prima facie case of the right to recover damages, and the burden of proof passes to him who obtained the injunction to establish his justification.

176 S.W.2d at 963–64. Hence, we reason that the residents in the present case dismissed their application for injunctive relief against Futerfas and that Futerfas, therefore, made out a prima facie case of the

right to recover damages, thus shifting the burden to the residents to establish justification.

Accordingly, we conclude that the residents, as defendant-movants, have the negative burden of proving their justification for issuance of the temporary restraining order. *See National Founders Corp.*, 521 S.W.2d at 97. It is not the burden of Futerfas, as opponent of such motion for summary judgment, to prove the residents had no justification. *See National Founders Corp.*, 521 S.W.2d at 97. The non-moving party has no burden whatsoever in a summary judgment case until the moving party establishes its right to a summary judgment. *Bankers Commercial Life*, 631 S.W.2d at 232.

■ Next, we look for any summary judgment proof proving the residents' justification for issuance of the temporary restraining order. The residents point us to their intent as justification. Braden tells us that all his actions complained of by Futerfas "were taken for the purpose of alleviating a significant neighborhood nuisance which was infringing upon his own personal and property rights, and as such, his actions were based upon a lawful and justifiable purpose." The group residents tell us that "[t]here is an abundance of evidence in this record that [their] only reason for seeking injunctive relief against [Futerfas] was to secure for themselves a good night's sleep in the peace and quiet of their own homes, and to preserve the value of their property." Thus, the residents acknowledge that their intent is a fact issue as to Futerfas' claim for wrongful injunction. Therefore, we again learn of the residents' intent through their own words. Again, we fail to see how Futerfas could swear to all facts necessary to controvert the residents' testimony of a lawful and proper intent in obtaining injunctive relief. Furthermore, we fail to see how Futerfas could swear to all facts necessary to controvert the fact that no two or more residents combined to obtain wrongful injunctive relief.

Again, we conclude that the residents' interested, self-serving testimony under these circumstances, in and of itself, establishes that genuine issues of fact relating to the residents' credibility as witnesses exist. Moreover, we conclude further that genuine issues of fact relating to the residents' justification for issuance of the temporary restraining order exist. Consequently, we conclude further that the trial court erred in granting summary judgment in favor of the residents with respect to Futerfas' claim for wrongful injunction.

### Abuse of Process and Malicious Prosecution

Futerfas briefs abuse of process and malicious prosecution as but one cause of action arising out of the filing of the criminal complaints against him. Futerfas does not include assertions of abuse of process in his claim for wrongful injunction. For purposes of this opinion, however, we treat abuse of process and malicious prosecution separately.

 An action for abuse of process presupposes an originally valid and regular process duly and properly issued. *Tandy Corp. v. McGregor*, 527 S.W.2d 246, 249 (Tex.Civ.App.—Texarkana 1975, writ ref'd n.r.e.) When valid and regular process has duly and properly issued, three elements must exist to sustain a cause of action for abuse of process. The three elements are:

1. that the defendant made an illegal, improper, or perverted use of process, a use neither warranted nor authorized by the process;
2. that the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of process; and
3. that damage resulted to the plaintiff as a result of such irregular act.

*Lozano v. Tex-Paint, Inc.*, 606 S.W.2d 40, 43 (Tex.Civ.App.—Tyler 1980, no writ).

 We discern from the residents' briefs that they claim summary judgment was proper because they proved no genuine issue of material fact existed on the following essential grounds of recovery:

(1) that a valid and regular process duly and properly issued; (2) that there was an illegal, improper or perverted use of process, a use neither warranted nor authorized by the process; and (3) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of process. The defendant movants have a negative burden of proving the absence of one of these grounds, each of which is essential to Futerfas' abuse of process cause of action. *See National Founders Corp.*, 521 S.W.2d at 97. It is not the burden of Futerfas, as opponent of such motion for summary judgment, to prove the existence of these grounds. *See National Founders Corp.*, 521 S.W.2d at 97. The non-moving party has no burden whatsoever in a summary judgment case until the moving party establishes its right to a summary judgment. *Bankers Commercial Life*, 631 S.W.2d at 232.

We focus on the second element, that there was an illegal, improper or perverted use of process. Futerfas admits that he has not been arrested or tried in connection with the criminal complaints. If Futerfas has not been arrested, then there has been no "use" of any process (presumably a warrant for his arrest) issued as the result of the filing of the criminal complaints against him. Thus, the undisputed facts establish that the residents never made an illegal, improper or perverted use of process. In short, as to the first element of abuse of process, the undisputed facts establish the absence of the required illegal, improper or perverted use of process. We conclude, therefore, that the residents have met their negative burden on motion for summary judgment to show the absence of the required illegal, improper or perverted use of process. Thus, we conclude further that the residents have shown that Futerfas has no cause of action for abuse of process as a matter of law. Consequently, we conclude further that the trial court did not err in granting summary judgment in favor of the residents with respect to Futerfas' claim for abuse of process. Our holding, however, does not preclude intro-

duction at trial on the merits of evidence of the filing of the criminal complaints, or evidence of any process resulting from the criminal complaints that might hereafter issue and be used, in support of Futerfas' cause of action for conspiracy.

▉▉▉ Next, we consider that part of Futerfas' cause of action as it pertains to malicious prosecution. A plaintiff must establish seven separate proof elements of malicious prosecution:

1. commencement of a criminal prosecution against the Plaintiff;
2. Which has been caused by Defendant or through Defendant's aid or cooperation;
3. Which terminate in favor of Plaintiff;
4. That Plaintiff was innocent;
5. That there was no probable cause for such proceeding;
6. That it was done with malice; and
7. That it resulted in damage to the Plaintiff.

*Thomas v. Cisneros,* 596 S.W.2d 313, 316 (Tex.Civ.App.—Austin 1980, writ ref'd n.r. e.). We focus upon the third element, termination in the plaintiff's favor. As noted, Futerfas admits that he has not been arrested as a result of the criminal complaints filed by McCracken, Stevens and Ramsey. Thus, the undisputed facts establish that the criminal prosecutions against Futerfas did not terminate in favor of Futerfas. In short, as to the third element of malicious prosecution, the undisputed facts establish the absence of the required termination in favor of the plaintiff. We conclude, therefore, that the residents have met their negative burden on motion for summary judgment to show the absence of termination in Futerfas' favor. Thus, we conclude further that the residents have shown that Futerfas has no cause of action for malicious prosecution as a matter of law. Consequently, we conclude further that the trial court did not err in granting summary judgment in favor of the residents with respect to Futerfas' claim for malicious prosecution. Our holding, however, does not preclude introduction at trial on the merits of evidence of the filing of

the criminal complaints in support of Futerfas' cause of action for conspiracy.

### Tortious Interference With Contract

▉▉▉ The essential elements of a claim for tortious interference are that: (1) a contract existed that was subject to interference; (2) the act of interference was willful and intentional; (3) such intentional act was a proximate cause of the plaintiff's damages; and (4) actual damage or loss occurred. *Bellefonte Underwriters Insurance Co. v. Brown,* 663 S.W.2d 562, 573 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.); *Armendariz v. Mora,* 553 S.W.2d 400, 404 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.). We direct the reader's attention to the second element, an intentional act. Again, we hear the residents' denial of an improper intent to interfere with contract through their own words. Again, we fail to see how Futerfas could swear to all facts necessary to controvert the fact that the residents' acts were not directed at his lease with Texas Music and were not willful and intentional. Furthermore, we fail to see how Futerfas could swear to all facts necessary to controvert the fact that two or more residents did not combine to willfully and intentionally interfere with the lease contract.

Again, we conclude that the residents' interested, self-serving testimony under these circumstances, in and of itself, establishes that genuine issues of fact relating to the residents' credibility as witnesses exist. Consequently, we conclude further that the trial court erred in granting summary judgment in favor of the residents with respect to Futerfas' claim for tortious interference with contract.

### Damages

▉▉ The residents insist that as to each of Futerfas' causes of action they have shown that Futerfas suffered no damages as a matter of law. As defendant-movants, the residents had the negative burden of proving that Futerfas suffered no damages. The standards for reviewing a motion for summary judgment are well estab-

lished. As mandated by the Supreme Court of Texas they are:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management*, 690 S.W.2d 546, 548–49 (Tex.1985). Although the residents advance various legal arguments to establish that Futerfas suffered no damages as a matter of law, we note the requirements that evidence favorable to Futerfas be taken as true, that every reasonable inference must be indulged in favor of Futerfas and that any doubts be resolved in Futerfas' favor.

Taking the evidence favorable to Futerfas as true and indulging every reasonable inference in favor of Futerfas and resolving any doubts in favor of Futerfas, we conclude that all actions of the residents complained of by Futerfas were taken by the residents in order to disrupt Will's Barn's business. We express no opinion, however, as to whether the residents' are liable for their actions. For the purpose of this opinion we assume, but do not decide, that the residents are liable for their actions under Futerfas' causes of action. Thus, we reach the question of whether the residents have met their negative burden on motion for summary judgment to prove that Futerfas suffered no damages as a matter of law. We conclude that the residents failed to meet this burden. We reach this conclusion because the residents did not prove that Futerfas incurred no loss of percentage rentals under the lease contract as a result of disruption of Will's Barn's business. The residents argue that Futerfas suffered no lost rentals because he collected the minimum monthly rentals and obtained a more favorable lease after expiration of his lease with Texas Music. The residents, however, ignore the percentage rent provisions in the Texas Music lease.

The lease contract between Futerfas and Texas Music provided for both a minimum monthly rental and a percentage rent "equal to the amount by which six percent (6%) of all Gross Sales ... during each full or partial calendar year exceeds the [minimum monthly rental] for such year." We conclude that lost percentage rentals would be one measure of damages for each of Futerfas' causes of action. We reach this conclusion because all actions of the residents complained of by Futerfas were taken by the residents in order to disrupt Will's Barn's business. Business disruptions can reduce gross sales. The residents failed to show that their actions did not deprive Futerfas of percentage rentals under the lease. We recognize the difficulty in meeting this negative burden. Indeed, we recognize the difficulties Futerfas will have to establish these damages when they become his burden on trial on the merits. Nevertheless, the movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon*, 690 S.W.2d at 548. We conclude that the residents failed to meet that burden as to damages for each of Futerfas' causes of action. Therefore, we conclude further that there are genuine issues of material fact as to damages in the present case. Consequently, we conclude further that the trial court erred in granting the motions for summary judgment in favor of the residents. Our holding that lost percentage rentals would be one measure of damages for each of Futerfas' causes of action does not preclude other measures of damages for any or all of Futerfas' causes of action.

### Conclusion

There is no genuine issue of material fact as to an essential element of Futerfas' causes of action for abuse of process and malicious prosecution, and the trial court's judgment must be affirmed insofar as it

awards the residents a take-nothing judgment as to Futerfas' causes of action for abuse of process and malicious prosecution. The existence of genuine issues of material fact preclude summary judgment as to all of Futerfas' remaining causes of action. Except as to Futerfas' causes of action for abuse of process and malicious prosecution, the trial court erred in granting the motions for summary judgment in favor of the residents.

In light of our disposition of the present case, we must rule on a post-submission motion filed by Futerfas and make the following additional comments. Following oral argument, Futerfas moved this court for leave to supplement the transcript to bring before us an instrument which Futerfas describes as a "pleading." In Futerfas' words he asks "leave of the Court to file a pleading entitled 'Larry Futerfas' Brief in Support of His Response to Motion for Summary Judgment'." Futerfas' motion makes clear that he relies on his brief to identify particular depositions and the specific parts of depositions that raise fact issues that challenge the residents' deposition testimony. Thus, Futerfas seeks to use the contents of a brief filed in the trial court to meet the group residents' contention that he did not file legally sufficient responses to their motions for summary judgment. In view of our holding that no response by Futerfas to the motions for summary judgment was necessary, we conclude that we need not reach the question of whether a brief filed by a non-movant in a summary judgment proceeding constitutes the required written document within the meaning of that sentence in rule 166–A(c) reading "[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." Consequently, we deny Futerfas' motion to supplement the transcript. Furthermore, in light of our holding that no response by Futerfas to the motions for summary judgment was necessary, we conclude that we need not reach the question of whether the sentence in rule 166–A(c) reading "[i]ssues not expressly presented

to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal" requires a movant or a non-movant to identify the particular source of summary judgment proof and the specific parts of that summary judgment proof that raise fact issues. Thus, we leave to another case and time the question of the manner in which a party in a summary judgment proceeding "must *present* summary judgment *proof* when necessary to establish a fact issue." *Clear Creek,* 589 S.W.2d at 678 (emphasis added). In short, we do not decide whether rule 166–A(c) requires parties to articulate only the legal issues presented or whether rule 166–A(c) requires the parties to go further and, in a written response to a motion for summary judgment, cite chapter and verse of the summary judgment proof pertaining to the legal issues presented. Thus, we decline to speculate on the significance of the omission from the present rule 166–A(c) of language in the 1976 committee recommendation discussed in *Clear Creek,* 589 S.W.2d at 675–76, footnote 3 and, in particular, the omitted language:

> [T]he adverse party may not rest upon the mere allegations or denials of his pleadings, but must define specifically in writing the issue or issues he contends are controverted or point out the defects in the movant's proof, *and, if necessary to demonstrate a factual dispute, respond with facts from depositions, answers to interrogatories, admissions on file, affidavits,* if any, showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

(Emphasis added).

We affirm the trial court's judgment in favor of the residents and against Futerfas insofar as it orders, adjudges and decrees that Futerfas take nothing against the residents for abuse of process and malicious prosecution. We reverse the remainder of the trial court's judgment in favor of the residents and against Futerfas, and we re-

mand the case to the trial court. All costs on appeal are taxed against the residents.

SPARLING, J., not participating.