McDADE + COMPANY, Appellant,

v.

**FRIENDSWOOD DEVELOPMENT COMPANY and American Bureau of Shipping, Appellees.**

No. 09–94–069 CV.

Court of Appeals of Texas, Beaumont.

Dec. 7, 1995.

Rehearing Overruled Jan. 4, 1996.

Thomas R. McDade, McDade & Fogler, Houston, David M. Gunn, Houston, for appellant.

Lisa J. Wheeler, Houston, John D. White, Jon L. Johnson, Winstead, Sechrest & Minick, Houston, Kelly H. Scoffield, Houston, for appellee.

Before WALKER C.J., and BURGESS, and STOVER, JJ.

## OPINION

BURGESS, Justice.

This is a summary judgment case involving the interpretation of a real estate brokerage agreement. McDade + Company (McDade) entered into a brokerage agreement with American Bureau of Shipping (ABS) in connection with ABS' search for office space in Houston, Texas. The brokerage agreement named McDade as ABS' exclusive broker but contained an exception as to Friendswood Development Company (Friendswood). ABS then leased office space from Friendswood. McDade sued both ABS and Friendswood under various causes of action asserting the exception in the McDade–ABS agreement did not cover the ABS–Friendswood transaction. The trial court granted both ABS' and Friendswood's motion for summary judgment.

## STANDARD OF REVIEW

■ The standards for reviewing the granting of a motion for summary judgment are well established. The movant for summary judgment has the burden of showing there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548 (Tex. 1985). Evidence that favors the non-movant will be taken as true in determining whether a material fact issue exists. *Id.* at 548–549. Every reasonable inference will be indulged in favor of the non-movant and any doubts resolved in its favor. *Id.* at 549.

■ Establishing that no material fact issue exists may be accomplished by summary judgment evidence which conclusively shows that the plaintiff cannot prove at least one element of each cause of action. *See Sakowitz, Inc. v. Steck,* 669 S.W.2d 105, 107 (Tex.1984).[1] If a defendant moves for summary judgment on the basis of an affirmative defense, he must conclusively prove all essential elements of that defense. *McKellar v. Marsac,* 778 S.W.2d 573, 576 (Tex.App.— Houston [1st Dist.] 1989, no writ) *citing*

1. *Sakowitz* was overruled on other ground in *Sterner v. Marathon Oil Co., infra.*

*Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex. 1972).

### POINT OF ERROR ONE— APPELLEE ABS

■ McDade in its first point of error argues the trial court improperly granted summary judgment to ABS. In its motion, ABS raised an affirmative defense which is dispositive of this point.

ABS contends McDade's failure to comply with the requirements of the Real Estate License Act section 20(b) (RELA) precludes the cause of action. McDade replies these requirements apply only to recovery-of-commission suits, which this case is not. RELA provides in pertinent part:

An action may not be brought in a court in this state for the recovery of a commission for the sale or purchase of real estate unless the promise or agreement on which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged or signed by a person lawfully authorized by him to sign it.

TEX.REV.CIV.STAT.ANN. art. 6573a § 20(b) (Vernon Supp.1995). McDade does not allege they have a writing that satisfies these requirements.[2] Rather, it alleges its suit is for breach of an agency agreement and not for recovery of a commission—therefore the suit is not within the parameters of RELA.

In *Henry S. Miller Co. v. Treo Enterprises,* 585 S.W.2d 674 (Tex.1979), our Supreme Court addressed the distinction between suing for breach of contract and for a commission. The court found the promissory note being sued upon represented a commission and therefore the requirements of RELA § 20 applied.

For the purposes of determining the applicability of the Real Estate License Act ... the substance of the contract is the controlling question, not the form which the transaction ultimately takes. [citation omitted] To hold otherwise would encourage ... entities to develop ingenious devices or other indirections to evade the salutary purposes of the Act.

*Id.* at 676–677.

Several Courts of Appeals have addressed this issue. In *Cook v. City of Plano,* 656 S.W.2d 607, 608 (Tex.App.—Dallas 1983, writ ref'd n.r.e.), the court recognized:

[W]hen a broker has contracted for an exclusive agency and the principal wrongfully breaches the contract, the broker is entitled to recover damages ... [and] in such instances, the broker's cause of action is not to recover the commission promised to him but to recover damages for the principal's breach. [citation omitted] The measure of damages to which the broker is entitled ... is the amount of his probable earnings under the contract, or in other words, his commission.

But the court went on to state: "[i]t would be ironic if a broker could recover his commission after breach of a contract which would not support recovery of a commission from his principal had it been performed." *Id.* The court then found that where a contract in writing has not been executed by the party charged, Texas courts have consistently denied recovery.

The First District Court of Appeals of Houston followed *Cook* in *McKellar v. Marsac,* 778 S.W.2d at 573. As noted by the court, "[a] salutary purpose of the Real Estate License Act is to protect sellers and buyers of real estate from real estate broker commission claims, unless those claims are supported by written agreements." *Id.* at 576. The court quoted heavily from *Cook* and held that characterizing the sale of real estate as a joint venture and labelling a commission as a profit share made it no less a real estate sale for a commission. *Id.* at 576. Since neither party contended a written agreement existed, the finding that the action was in fact a recovery-for-commission suit was dispositive and the broker was denied recovery. *Id.*

*LA & N Interests, Inc. v. Fish,* 864 S.W.2d 745 (Tex.App.—Houston [14th Dist.] 1993, no

---

2. The agency agreement provides that McDade look only to the landlord or seller for its commission or fee.

writ), also followed *Cook.* The facts of *Fish* are identical to those of the case at hand. LA & N Interests contracted with Fish to be their exclusive agent in locating real estate. The agreement provided LA & N would look to the seller for their fee. Fish then purchased property with the assistance of another company and LA & N sued. The court found that no terms of the agreement charged Fish with an obligation to pay and therefore "the Agreement [did] not satisfy the RELA writing requirement." *Id.* at 750. The court went on to state:

> While we believe that fact issues exist pertaining to whether Fish breached his exclusive agency agreement with [LA & N], Texas law is clear that a plaintiff cannot evade the RELA writing requirement by characterizing a claim for a real estate commission in breach of contract terms. *Id.*

According to the agreement between ABS and McDade, McDade was to perform various brokerage services for ABS, including investigating and securing a satisfactory location, using other brokers as necessary, and negotiating a lease for purchase. In return, McDade was to receive a commission or fee from the landlord or seller, depending upon whether a lease or purchase was negotiated. These are the same contract terms present in *Treo, McKellar, Cook,* and *Fish.* In each case, the court found the action was for a commission and therefore RELA applied.

■ The action against McDade is clearly one for a commission and therefore RELA applies. It was McDade's duty to protect itself by obtaining a writing that satisfied RELA. As noted in *Clements v. Withers,* 437 S.W.2d 818, 821 (Tex.1969), this could have been done by incorporating into the brokerage agreement liquidated damages provisions, a reimbursable fee schedule, or simply requiring ABS to pay the commission if the seller failed to do so.

■ Where RELA applies and the requirements are not met, recovery has been denied when fraud, conspiracy, deceit, quantum meruit and breach of contract have been pleaded. *McKellar,* 778 S.W.2d at 575. A plaintiff "cannot urge causes of action sounding in tort such as fraud, tortious interference with contract and civil conspiracy in order to avoid the requirements of the Act." *Cissne v. Robertson,* 782 S.W.2d 912, 918 (Tex.App.—Dallas 1989, writ denied). The application of RELA disposes of all of McDade's causes of action against ABS. Accordingly, we overrule that portion of McDade's point of error and affirm the summary judgment for ABS.

## POINT OF ERROR ONE—APPELLEE FRIENDSWOOD

McDade also argues the trial court improperly granted summary judgment to Friendswood. As the trial court did not specify the grounds upon which summary judgment was granted, we must determine whether any grounds raised by Friendswood in its motion for summary judgment are sufficient.

### *Defense of Privilege*

■ Friendswood asserted the affirmative defense of privilege in its motion. McDade does not dispute that Texas law recognizes the defense but argues Friendswood failed to establish all elements of the defense as a matter of law. "A party is privileged to interfere with another's contractual or business relations if 1) he does so in a bona fide exercise of his own rights or 2) his right to the subject matter is equal to or superior to that of the other party." *Caller-Times Publishing Co., Inc. v. Triad Communications, Inc.,* 855 S.W.2d 18, 21 (Tex. App.—Corpus Christi 1993, no writ), *citing Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 939 (Tex.1991). The defense, however, only protects good faith assertions of legal rights. *Id.* at 939. Friendswood, therefore, must prove good faith as a matter of law in order to establish the privilege. *Jackson v. Cheatwood,* 445 S.W.2d 513, 514 (Tex.1969).

To determine whether Friendswood was acting in good faith, we must determine whether the McDade–ABS agreement permitted Friendswood's actions. The agreement provides:

> [ABS] hereby appoint[s] McDade + Company ("McDade") as our sole broker and

grant[s] to McDade the exclusive right to obtain a lease or purchase of Premises on our behalf, *with the exception of Friendswood* Development Company or other Exxon affiliates which are excluded from the terms of this agreement. (emphasis added)

■ It is the exception which is at issue. Both parties argue it is unambiguous and yet both offer differing interpretations. If the contract can be given a definite or certain legal meaning, it is unambiguous. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.,* 907 S.W.2d 517 (1995). If, however, the contract is subject to two or more reasonable interpretations, it is ambiguous. *Id.*

■ The courts have recognized two types of ambiguity, patent and latent. *Id.* at 520. A patent ambiguity is evident on the face of the contract while a latent ambiguity is apparent when a contract is applied to the subject matter with which it deals and an ambiguity appears. *Id., citing Murphy v. Dilworth,* 137 Tex. 32, 151 S.W.2d 1004 (1941); *Bache Halsey Stuart Shields, Inc. v. Alamo Sav. Ass'n of Texas,* 611 S.W.2d 706 (Tex.Civ.App.—San Antonio 1980, no writ).

*Bache Halsey Stuart Shields, Inc.,* 611 S.W.2d at 706, is similar to the case at hand. In that case, a clause in the lease gave Bache the right to exclude any competitor from the building in which the lease premises were located. Circumstances indicated the clause was added to allow Bache to locate away from competitors' offices. When the lease was negotiated, Alamo made known to Bache it intended to build another building on the same lot. The court held these circumstances raised a question of fact precluding summary judgment on the issue of whether the parties intended that Alamo would be free to lease space in the second building to Bache's competitor, thereby restoring the condition from which Bache was trying to escape. *Id.* at 708.

Similarly, a clause in the ABS–McDade agreement excepted Friendswood from the terms of the agreement. Circumstances indicate the clause was added to allow ABS to lease from Friendswood any property it currently owned. When the agreement was ne-gotiated, ABS made known to McDade that Friendswood presently owned no suitable property. Because of these surrounding circumstances, a question of fact is raised as to whether the parties intended ABS would be free to lease space from Friendswood that Friendswood did not own. The agreement, therefore, is latently ambiguous.

Since the contract is ambiguous, it cannot be determined as a matter of law that Friendswood's actions were a good faith exercise of its own rights. Therefore, Friendswood's affirmative defense of privilege fails and summary judgment on this ground is improper.

### Disproving One or More Elements of Each Cause of Action

The next issue is whether Friendswood conclusively showed McDade could not establish one or more elements of each cause of action. McDade pleaded tortious interference with contract, tortious interference with prospective business relations, and civil conspiracy against Friendswood.

Friendswood first asserts that underlying each cause of action is the premise that the McDade–ABS agreement did not permit Friendswood's conduct. Therefore, if the agreement allowed its actions, all three causes of action must fail. However, as discussed above, the agreement is ambiguous and material issues of fact exist as to its meaning. It is only Friendswood's interpretation of an ambiguous contract that allows its actions. Therefore, it is not established as a matter of law that Friendswood's actions were proper under the contract and summary judgment is improper on this ground.

■ Friendswood alleges McDade has not established the element of damages as to all three causes of action. Friendswood bases its assertion on the holding in *Cissne,* 782 S.W.2d at 918 that "any recovery to which the [plaintiff] may be entitled must be based upon a legal right to receive a real estate commission." Friendswood argues that since McDade cannot recover from ABS under the agreement, McDade cannot recover from Friendswood. In *Cissne* the plaintiff sued to recover a commission from the party owing

it. They were not suing a third party for interference. The court in *Cissne* refused to allow the commission claim to be cast as a tort claim in order to avoid the requirements of RELA. *Id.* The court was not addressing claims that a third party tortiously interfered. Friendswood's reliance on *Cissne* is misplaced.

The Texas Supreme Court has held that "mere unenforceability of a contract is not a defense to an action for tortious interference with its performance." *Juliette Fowler Homes, Inc. v. Welch Assoc., Inc.,* 793 S.W.2d 660, 664 (Tex.1990); *Clements v. Withers,* 437 S.W.2d at 821. The fact that RELA bars enforcement of the McDade–ABS agreement for failure to meet the writing requirement does not dispose of McDade's claims against Friendswood. As the court held in *Clements,* 437 S.W.2d at 821, Friendswood may not "take the shoes of [ABS] and ... raise the shield of [RELA]." Friendswood does not conclusively show in its motion for summary judgment that McDade has failed to establish the element of damages.

■■■■■ Next, Friendswood's motion for summary judgment argues McDade has not established Friendswood acted willfully and intentionally, thus not establishing one element of each cause of action. Tortious interference with contract requires the occurrence of an act of interference that was willful and intentional. *Holloway v. Skinner,* 898 S.W.2d 793, 795–796 (Tex.1995). Tortious interference with prospective business relations requires a willful and intentional act by the defendant to prevent a contractual relationship. *Caller–Times Publishing Co., Inc. v. Triad Communications, Inc.,* 855 S.W.2d at 21. Therefore, if McDade failed to establish Friendswood acted willfully and intentionally, both of the above causes of action would fail. As to the third cause of action, civil conspiracy requires one or more unlawful, overt acts. *Massey v. Armco Steel Co.,* 652 S.W.2d 932 (Tex.1983). Friendswood argues the conspiracy claim is dependent on the tortious interference claims because McDade alleges the purported interference as the unlawful conduct. In sum, Friends-

wood asserts that disproving they acted willfully and intentionally disposes of all claims.

■■■■■ Friendswood argues "willful and intentional" is not shown because it acted in good faith and offers various undisputed facts to prove it. However, good faith is generally a fact issue to be determined by the trier of fact. *See Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690–691 (Tex.1989). Further, "[t]he mere fact that facts are undisputed does not always eliminate the right to a fact finding. If reasonable minds can draw different inferences or conclusions from undisputed facts, a fact issue is presented." *Futerfas v. Park Towers,* 707 S.W.2d 149, 152 (Tex.App.—Dallas 1986, writ ref'd n.r.e.) *citing Commercial Standard Ins. Co. v. Davis,* 134 Tex. 487, 137 S.W.2d 1, 2 (1940).

■■■■■ Also, where "summary judgment rests on the testimony of an interested witness and is of such a nature that it cannot be readily contradicted if untrue, an issue relating to credibility of the witness is presented and summary judgment is improper." *Id.* at 157; Tex.R.Civ.P. 166a(c). The courts have held that issues of intent and knowledge are not susceptible to being readily controverted and are best left to the determination of the trier of fact. *Futerfas,* 707 S.W.2d at 157; *Bankers Commercial Life Ins. Co. v. Scott,* 631 S.W.2d 228, 231 (Tex.App.—Tyler 1982, writ ref'd n.r.e.); *American Petrofina v. Crump Business Forms,* 597 S.W.2d 467, 471 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.). "Moreover, summary judgment should not be granted when the issues are inherently those for a jury, as in cases involving intent." *Futerfas,* 707 S.W.2d at 158, *citing* 4 R. McDonald, *Texas Civil Practice in District and County Courts* § 17.26.12 (rev. 1984).

■■■■■ Friendswood's attack on the willful and intentional prong of tortious interference is based upon its intent—its good intent—and its summary judgment proof is offered to demonstrate that intent. "Self-serving statements of interested parties testifying about what they knew or intended are not readily controvertible and will not support a motion for summary judgment." *Clark v. Pruett,* 820 S.W.2d 903, 906 (Tex.App.—Houston [1st

Dist.] 1991, no writ), *citing Casso v. Brand,* 776 S.W.2d 551, 557 (Tex.1989).

Therefore, upon reviewing the summary judgment proof offered by Friendswood, this court finds Friendswood did not conclusively prove good faith. Accordingly, Friendswood failed to disprove the willful and intentional element.

This discussion also disposes of Friendswood's final argument that its conduct was privileged and justified. As discussed previously, privilege is an affirmative defense that requires a showing of good faith. And as discussed immediately above, Friendswood's summary judgment proof does not conclusively establish good faith. Therefore, Friendswood has not shown its conduct was privileged as a matter of law and summary judgment on this ground is improper.

▬▬▬ Friendswood next asserts McDade has failed to establish proximate causation which is a necessary element of each cause of action. Proximate causation has two elements: foreseeability and cause in fact. *McClure v. Allied Stores of Texas, Inc.,* 608 S.W.2d 901, 903 (Tex.1980). Friendswood contends its actions are not the cause in fact of McDade's alleged injuries as the record shows the ABS lease with World Houston Plaza was highly improbable regardless of any actions of Friendswood. Friendswood's next argument is based upon the same evidence. Friendswood contends McDade has not established a reasonable probability the contractual relationship would be realized, which is an element of the claim of tortious interference with prospective business relations. This argument is also based upon a showing that the prospective lease between ABS and World Houston Plaza was unlikely.

Texas Rule of Civil Procedure 166a(c) provides that a summary judgment may be based on uncontroverted testimonial evidence of an interested witness. The courts have recognized that once the testimony has been controverted by competent proof, the motion for summary judgment should be denied as a fact issue has been created. *Clark,* 820 S.W.2d at 906. The probability of a successful lease being negotiated between ABS and

World Houston Plaza is shown to be controverted in the record.

Deposition testimony attached to Friendswood's motion for summary judgment shows that ABS signed a letter agreement regarding the lease with World Houston Plaza. This raises a fact issue as to the likelihood of ABS leasing space in World Houston Plaza. Consequently, Friendswood cannot conclusively refute McDade's claim of a reasonable probability the contractual relationship would have been realized but for Friendswood's interference.

As Friendswood has failed to disprove one or more of the elements of any one of the three causes of action, summary judgment was improper as to each of McDade's claims against Friendswood. Point of error one as to Friendswood is sustained and the trial court's summary judgment for Friendswood is reversed and remanded.

### POINT OF ERROR TWO

In its second point of error, McDade argues the trial court improperly denied its motion for partial summary judgment on the issue of ABS' liability for breach of contract. As discussed previously, ABS' affirmative defense under RELA disposes of McDade's breach of contract claim. Therefore, the trial court's denial of McDade's motion for partial summary judgment was proper and we overrule McDade's second point of error.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.