**FRIENDSWOOD DEVELOPMENT COMPANY, Petitioner,**

v.

**McDADE + COMPANY, Respondent.**

No. 96–0150.

Supreme Court of Texas.

June 28, 1996.

Rehearing Overruled Aug. 16, 1996.

Linda Broocks, Michael Samford, Kelly H. Scoffield, Robert C. Harrison, Houston, for Petitioner.

John D. White, Jon L. Johnson, William P. Maines, C. Thomas Kruse, Houston, David M. Gunn, Bellaire, for Respondent.

## OPINION

PER CURIAM.

This action requires that we answer two related questions. First, we must determine whether the brokerage contract between the American Bureau of Shipping (ABS) and McDade + Company is ambiguous. Second, if we conclude that the contract is not ambiguous, we must determine whether its terms permit ABS to lease office space from Friendswood Development Company without breaching the contract or subjecting Friendswood to liability for tortiously interfering with the contract. We conclude that the contract is not ambiguous and that its express terms permit ABS to lease office space from Friendswood without subjecting either to liability to McDade. Accordingly, the Court, without hearing oral argument, reverses in part and affirms in part the court of appeals' judgment. TEX.R.APP.P. 170.

ABS, a New Jersey corporation, desired to relocate to Houston, Texas. ABS's president, formerly the president of Exxon Shipping, contacted Friendswood Development Company, an Exxon affiliate, to arrange for office space in one of its Greenspoint office buildings. Friendswood informed ABS that it had no available space, but that one of its Greenspoint I tenants would be moving to the new Greenspoint V building in about a year and at that time ABS could move to the vacated space in Greenspoint I. Friendswood also proposed that it would lease space in the Belchase Building, a property Friendswood did not own, and then sublet it to ABS for the year. Under this proposal, Belchase would serve as ABS's interim office.

While considering the Friendswood proposal, ABS contacted McDade + Company, a real estate brokerage firm. ABS hired McDade to evaluate alternative leasing arrangements. McDade presented its standard exclusive brokerage contract to ABS that provided McDade was the sole broker and had the exclusive right to obtain a lease or purchase of premises on ABS's behalf. ABS informed McDade of its ongoing discussions with Friendswood and its desire to exclude Friendswood and other Exxon affiliates from the brokerage contract. Accordingly, McDade inserted an exception in the standard brokerage contract that excluded Friendswood from the contract, thus permitting ABS to contract with either McDade or Friendswood for office space. After McDade inserted the provision excluding Friendswood and all other Exxon affiliates from the terms of the brokerage contract, ABS signed the contract. Thereafter, ABS accepted the Friendswood proposal of interim leasing for the year until space in Greenspoint I became available. After the year, ABS would begin a long-term lease at Greenspoint I.

When McDade discovered that Friendswood had leased space to ABS that it did not own, McDade filed the present suit alleging that ABS breached the brokerage contract and that Friendswood tortiously interfered with the brokerage contract. Both Friendswood and ABS filed motions for summary judgment, which the trial court granted. The court of appeals affirmed the summary

judgment for ABS, but reversed the summary judgment for Friendswood, holding that the brokerage contract was ambiguous and that Friendswood could not rely on the justification defense to a tortious interference claim. 911 S.W.2d 541, 546. Both Friendswood and McDade filed applications for writ of error with this Court.

Because this is an appeal from a summary judgment, we take as true evidence favorable to the non-movant. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). If the defendant disproves at least one element of the plaintiff's claims as a matter of law, summary judgment is appropriate. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex.1995). To obtain summary judgment based on an affirmative defense, the defendant must conclusively establish all elements of the affirmative defense. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995). Friendswood argues that the court of appeals erred by reversing the summary judgment granted in its favor. Friendswood alleges that it conclusively negated at least one element of McDade's tortious interference claim, but that even if it did not, it conclusively established that it was legally justified in interfering with the contract according to the contract's unambiguous terms.

A tortious interference cause of action is established if the plaintiff proves: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) the act was a proximate cause of the plaintiff's damages; and (4) actual damage or loss resulted. *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210 (Tex.1996); *Holloway v. Skinner*, 898 S.W.2d 793, 795–96 (Tex.1995). However, even if Friendswood cannot conclusively negate one of these four elements, it may still prevail if it conclusively establishes the affirmative defense of justification. A party is justified in interfering with another's contract if it exercises (1) its own legal rights or (2) a good faith claim to a colorable legal right, even though that claim ultimately proves to be mistaken. *Texas Beef*, 921 S.W.2d at 211. Here, the court of appeals held that Friendswood could not rely on part one of this defense—exercise of its own legal rights—because the brokerage contract did not unambiguously exclude Friendswood from all of the terms of the contract. 911 S.W.2d at 546. We disagree. The court of appeals erred.

The question we must first decide is whether the McDade/ABS brokerage contract is ambiguous. Whether a contract is ambiguous is a question of law for the court to decide. *National Union Fire Ins. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995); *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). This determination is made by looking at the contract as a whole in light of the circumstances present when the parties entered the contract. *National Union*, 907 S.W.2d at 520. If a contract is worded in such a manner that it can be given a definite or certain legal meaning, then it is not ambiguous. *National Union*, 907 S.W.2d at 520; *Coker*, 650 S.W.2d at 393.

An ambiguity in a contract may be either patent or latent. A patent ambiguity is one evident on the face of the contract. *National Union*, 907 S.W.2d at 520. The brokerage contract between ABS and McDade provided that:

> We hereby appoint McDade + Company ("McDade") as our sole broker and grant to McDade the exclusive right to obtain a lease or purchase of Premises on our behalf, *with the exception of Friendswood Development Company or other Exxon affiliates which are excluded from the terms of this contract.*

From the express language of the contract it is apparent that ABS appointed McDade as its exclusive broker, but that it excluded Friendswood from the contract's terms. There is no limitation of any kind on the exclusion. Therefore, Friendswood and all other Exxon affiliates are excluded from the terms of the contract. Because, on its face, the meaning of the exclusion is clear, no patent ambiguity exists.

McDade, however, asserts that the contract contains a latent ambiguity. A latent ambiguity exists when a contract is unambiguous on its face, but fails by reason of some collateral matter when it is applied

to the subject matter with which it deals. *National Union,* 907 S.W.2d at 520. McDade urges that the contract was latently ambiguous because it *believed* that the Friendswood exception only allowed Friendswood to lease space it already owned to ABS. McDade bases its interpretation of the contract on the undisputed fact that Friendswood had never leased space it did not own. McDade's interpretation, however, is parol evidence, and parol evidence of intent cannot be admitted for the purpose of creating an ambiguity. *National Union,* 907 S.W.2d at 520–21.[1] Only after a contract is found to be ambiguous may parol evidence be admitted for the purpose of ascertaining the true intentions of the parties expressed in the contract. *National Union,* 907 S.W.2d at 521. Additionally, the fact that Friendswood had not in the past leased space it did not own does not make the otherwise unambiguous explicit statement in the contract—that Friendswood is excluded—ambiguous. In *National Union,* we set forth the following example of a latent ambiguity:

> [I]f a contract called for goods to be delivered to "the green house on Pecan Street," and there were in fact two green houses on the street, it would be latently ambiguous.

*National Union,* 907 S.W.2d at 520 n. 4. Applying the McDade/ABS contract's language to the subject matter with which it deals does not produce an uncertain or ambiguous result. We conclude that the contract in this case is not latently ambiguous.

Because the contract does not contain either patent or latent ambiguities, we give the contract its plain grammatical meaning. *Lyons v. Montgomery,* 701 S.W.2d 641, 643 (Tex.1985). The contract unequivocally excludes Friendswood from all terms of the McDade/ABS contract, thus allowing Friendswood to lease any space to ABS. Because Friendswood conclusively established that it had a legal right to interfere with the McDade/ABS contract, it conclusively estab-

lished the justification defense. *Texas Beef,* 921 S.W.2d at 211; *Sakowitz, Inc. v. Steck,* 669 S.W.2d 105, 107 (Tex.1984), *overruled on other grounds by Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989). The trial court properly rendered summary judgment for Friendswood.

■ We next address McDade's claims against ABS. McDade asserts that ABS breached the McDade/ABS contract by leasing space from Friendswood. McDade also contends that ABS tortiously interfered with the contract, breached other tort duties, and deprived McDade of its commission. Because we hold that the brokerage contract is not ambiguous and allows ABS to contract with Friendswood, we also hold that ABS conclusively proved that it did not breach the contract or breach any tort duties simply by proceeding in accordance with the terms of the contract. Moreover, McDade's argument that ABS tortiously interfered with the contract is specious. A party to a contract cannot tortiously interfere with its own contract. *Holloway,* 898 S.W.2d at 795. For these reasons, summary judgment was proper.

We hold that both Friendswood and ABS were entitled to summary judgment. Pursuant to Rule 170 of the Texas Rules of Appellate Procedure, the Court, without hearing oral argument, reverses that part of the court of appeals' judgment reversing summary judgment for Friendswood and renders judgment that McDade take nothing. We affirm the remainder of the court of appeals' judgment. TEX.R.APP.P. 170.

---

1. As we held in *National Union:*

   > Extrinsic evidence may, indeed, be admissible to give the words of a contract a meaning consistent with that to which they are reasonably susceptible, *i.e.,* to "interpret" contractual terms. If the contract language is not fairly susceptible of more than one legal meaning or construction, however, extrinsic evidence is inadmissible to contradict or vary the meaning of the explicit language of the parties' written agreement.

   907 S.W.2d at 521 (citing *Hubacek v. Ennis State Bank,* 159 Tex. 166, 317 S.W.2d 30, 32 (1958)) (footnote omitted).