**SOUTH TEXAS MEDICAL CLINICS, P.A., Petitioner,**

v.

**PHYCOR, INC. and Phycor of Wharton, L.P., Respondent.**

**No. Civ.A. H–00–0771.**

United States District Court,
S.D. Texas,
Houston Division.

Sept. 8, 2000.

James G. Munisteri, Gardere Wynne Sewell and Riggs, Houston, TX, for plainitff.

Arthur M. Meyer, Jr., Brown McCarroll & Oaks Hartline, Dallas, TX, for defendant.

## MEMORANDUM AND ORDER

HOYT, District Judge.

### I. INTRODUCTION

Before the Court are a Motion for Partial Summary Judgment filed by the plaintiff, South Texas Medical Clinics, P.A. (hereinafter, "STMC"), and a Cross–Motion for Partial Summary Judgment filed by the defendants and counter-claimants, PhyCor, Inc. and PhyCor of Wharton, L.P. (hereinafter, collectively "PhyCor").

### II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case was removed from the 268th Judicial District of Fort Bend County[1] to this Court based on diversity jurisdiction. STMC is a professional association doing business as a multi-specialty medical practice in Wharton, Texas. PhyCor is a medical practice association. PhyCor represented to STMC that it had the existing capability, through management and ad-

---

1. *South Texas Medical Clinics, P.A. v. PhyCor, Inc.*, No. 112058 (Dist.Ct. of Fort Bend County, 268th Judicial Dist. of Texas, January 18, 2000).

ministrative efficiencies, economies of scale, improved systems and other cost saving and revenue generating techniques, to increase the profitability of STMC. Additionally, PhyCor represented to STMC that it would be a "committed corporate partner" of STMC and that PhyCor would support STMC's "growth with capital, management operating systems and the will to go ahead."

Based on the above-stated representations, on November 1, 1995, PhyCor and STMC entered into a Purchase Agreement. At the same time, STMC entered into a Service Agreement and Security Agreement with PhyCor. Under the terms of the 40–year Service Agreement, PhyCor was to serve as a physicians' practice management company for the doctors group. On March 2, 2000, STMC severed its relationship with PhyCor. STMC explained to PhyCor that its termination of the Service Agreement was because continuing the Service Contract was placing the individual physicians' medical licenses at risk.

STMC and PhyCor were unsuccessful in resolving the details of logistics and collection responsibilities. Therefore, on April 5, 2000, PhyCor filed an application for a Temporary Injunction and Restraining Order. The parties subsequently met and resolved PhyCor's application with an Agreed Order entered on April 18, 2000. In the Order, STMC agreed to deposit into the court registry the sum of $136,351.00 plus additional sums collected from non-purchased (interim) receivables. On April 19, 2000, STMC deposited revenue representing all collections from non-purchased receivables. STMC also agreed to deposit in the court registry future collections from the non-purchase receivables until the Court enters an Order or Judgment awarding all or a portion of the funds to the appropriate party or parties.

## III. THE STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judg-ment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears this initial burden of informing the Court of the basis for its motions, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court reviews the record by drawing all inferences most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

"Once the moving party carries its burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The adverse party must show more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. If an adverse party completely fails to make an offer of proof concerning an essential element of that party's case on which that party will bear the burden of proof, then all other facts are necessarily rendered immaterial and the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

Hence, the granting of summary judgment involves a three-tier analysis. First the Court determines whether a genuine issue actually exists so as to necessitate a trial. Fed.R.Civ.P. 56(e). As issue is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Second,

the Court must ascertain whether that genuine issue pertains to material facts. Fed.R.Civ.P. 56(e). The substantial law of the case identifies the material facts, that is, those facts that potentially affect the outcome of the suit. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Third, assuming no genuine issue exists as to the material facts, the Court will decide whether the moving party shall prevail solely as a matter of law. Fed.R.Civ.P. 56(e).

The primary issue is whether the material facts present a sufficient disagreement as to require a trial, or whether the facts are sufficiently one-sided that one party should prevail as a matter of law. *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505. The substantive law of the case identifies which facts are material. *Id.* at 248, 106 S.Ct. 2505. Only disputed facts potentially affecting the outcome of the suit under the substantive law preclude the entry of summary judgment.

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548.

## IV. CONTENTIONS OF THE PARTIES

STMC's motion requests a declaration that PhyCor owns no security interest in STMC's accounts receivable for services that STMC performed between February 1, 2000 and February 29, 2000 (non-purchased receivables). STMC also requests an order awarding STMC the proceeds from non-purchased receivables deposited in the court registry pursuant to the April 18, 2000 Agreed Order (hereinafter, "Agreed Order"). PhyCor has filed a motion opposing Partial Summary Judgment and for Entry of Order Releasing Funds from the Court registry and a Cross–Motion for Partial Summary Judgment in its favor on the finding that PhyCor has a valid security interest in all STMC's accounts receivable. STMC contends that

they own the non-purchase receivables free and clear of PhyCor's claimed security interest. STMC asserts that PhyCor has no security interest because the required two conditions precedent have not occurred to facilitate the creation of that interest. STMC argues that the Security Agreement provides that a security interest will only attach "in the event that," (1) PhyCor has purchased the non-purchased receivables, and (2) such purchase was ineffective. STMC further argues that the Security Agreement also defines "collateral" as including only receivables purchased by PhyCor.

PhyCor contends that the plain language of the Security Agreement coupled with the Financing Statement mandates a finding that it has a valid subsisting security interest in the proceeds. PhyCor further asserts that even accepting STMC's interpretation that the security interests rest on two unmet conditions precedent, the Court should find that any alleged conditions precedent have been met due to STMC's repudiation of the subject agreements.

## V. THE CONTRACT

The relevant portions of the contract are as follows:

**(a) Section 8.3 of the Service Agreement:**

> *Accounts Receivable.* On approximately the tenth business day of each month, PhyCor shall purchase the accounts receivable of STMC arising during the previous month, by payment of cash into an account of STMC. The consideration for the purchase shall be an amount equal to all fees recorded each month (net of Adjustments) less service fees due to PhyCor under Article 8.... The parties recognize and agree that STMC may not transfer or otherwise assign its Medicare and Medicaid receivables to PhyCor and the foregoing is not intended to transfer or otherwise as-

sign such receivables to PhyCor. STMC covenants and agrees to pay over to PhyCor all proceeds received by STMC from Medicare and Medicaid accounts receivable (which amounts were included in the foregoing monthly calculation) in accordance with the provisions of Section 5.5(b) above. Although it is the intention of the parties that PhyCor purchase and thereby become owner of the accounts receivable of STMC, and in the case of Medicare and Medicaid accounts receivable, that PhyCor have a security interest in the proceeds therefrom, in case such purchase shall be ineffective for any reason and to evidence PhyCor's security interest in the proceeds of all accounts receivable including proceeds from Medicare and Medicaid receivables, STMC is concurrently herewith entering into a Security Agreement in the form attached as Exhibit 8.3 to grant a security interest in the accounts receivable and proceeds therefrom to PhyCor.

**(b) Section 2 of the Security Agreement**

Pursuant to the Asset Purchase Agreement, PhyCor has purchased the accounts receivable of Grantor and will purchase the accounts receivable of Grantor from time to time pursuant to the Service Agreement. As such, the transactions pursuant to the Agreements shall constitute a sale of accounts receivable and not a loan by PhyCor to Grantor secured by such accounts. In the event that such purchase is ineffective for any reason with respect to any account receivable, however, the Grantor grants to PhyCor a security interest in such accounts receivable as set forth in this Section 2, as collateral security for all of the Obligations (as defined in Section 3 hereof), the Grantor hereby pledges and assigns to PhyCor, and grants to PhyCor a continuing security interest in, any and all receivables of Grantor for which payment has been made by Parent under the Asset Purchase Agreement and any and all receivables for which payment will be made by PhyCor pursuant to Article 8 of the Service Agreement (the "Collateral") including:

(a) all of Grantor's right title and interest in and to (I) all accounts, accounts receivable, right to payment, and other forms of receivables and obligations of any kind, whether now or hereinafter existing and whether now owned or hereafter acquired, arising out of or in connection with the sale or lease of goods or rendering of services or otherwise, including, without limitation, all rights to payment under agreements with governmental bodies, insurance companies and prepaid health care organizations and excluding any such accounts, contract rights, and other obligations which can not be legally transferred to PhyCor . . .

## VI. DISCUSSION

### (A) Condition Precedent

 Whether a contract is ambiguous is a question of law for the Court to decide. *Weingarten Realty Investors v. Albertson's Inc.*, 66 F.Supp.2d 825, 839 (S.D.Tex. 1999). Under the general principals of contract law, the primary concern of the Court is to ascertain and give effect to the intentions of the parties as expressed in the instrument. *Lenape Resources Corp. v. Tenn. Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex.1996). However, mere disagreement over interpretation of a document alleged to be a contract is not enough to render the document ambiguous. *Columbia Gas Transmission Corp. v. New Ulm Gas*, 940 S.W.2d 587, 589 (Tex.1996). An ambiguity in a contract may be either patent or latent; a patent ambiguity is one evident on the face of the contract. *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex.1996). A latent ambiguity exists when a contract is unam-

biguous on its face but fails by reason of some collateral matter when it is applied to the subject matter in which it deals. *Id.* Uncertainty or lack of clarity in the language chosen by the parties is insufficient to render a contract ambiguous. *Hofland v. Fireman's Fund Ins. Co.,* 907 S.W.2d 597, 599 (Tex.App.—Corpus Christi 1995, no writ). The ambiguity must become apparent when the contract is read in the context of surrounding circumstances. *National Union Fire Ins. Co., v. CBI Indus., Inc.,* 907 S.W.2d 517, 521 (Tex.1995). Neither STMC nor PhyCor dispute the validity of the language of the contract. When the circumstances surrounding the contract are examined, no ambiguities arise. Therefore, the Court is of the opinion that neither latent nor patent ambiguities exist in the agreement.

■■■ When the parties disagree over the meaning of an unambiguous contract, the intent of the parties must be taken from the agreement itself, not from the parties' present interpretation. *Purvis Oil Corp. v. Hillin,* 890 S.W.2d 931, 935 (Tex. App.—El Paso 1994, no writ). The Court does not rely on the contentions of the parties, but must apply the proper rules of construction. The current issue for the Court to decide is whether the language of the contract created a condition precedent. A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation. *Centex Corp. v. Dalton,* 840 S.W.2d 952, 955 (Tex.1992). The disputed language of the contract states:

> ***Accounts Receivable.*** On approximately the tenth business day of each month, PhyCor shall purchase the accounts receivable of STMC arising during the previous month, by payment of cash into an account of STMC ... *in case such purchase shall be ineffective for any reason* and to evidence PhyCor's security interest in the proceeds of all accounts receivable including proceeds from Medicare and Medicaid receivables, STMC is concurrently herewith

entering into a Security Agreement ... (emphasis added)

■■ To make performances specifically conditional, terms such as "if," "provided that," "on condition that" or some similar phrases of conditional language must normally be included. *Criswell v. European Crossroads Shopping Center, Ltd.,* 792 S.W.2d 945, 948 (Tex.1990). While there is no requirement that such phrases be utilized, their absence is probative of the parties' intention that a promise be made rather than a condition imposed, so that the terms will be construed as a covenant. *Id.* When the Court substitutes the language "if" and "provided that" for the words "in case such," the provision reads "if purchase is ineffective for any reason." Thus, the Court concludes that the language of that particular provision creates a condition.

PhyCor contends the contract examined in its entirety does not create a condition. PhyCor avers that STMC is not including the language of the Financing Statement in their interpretation. Texas courts have held that "a contract must be read, considered, and construed in its entirety." *Amoco Gas Co. v. MG Intrastate Gas Corp.,* 914 S.W.2d 154, 158 (Tex.App.—Houston [1st Dist] 1995, no writ).

On close examination of the Security Agreement, more conditional language is found:

> PhyCor has purchased the accounts receivable of Grantor and will purchase the accounts receivable of Grantor from time to time pursuant to the Service Agreement ... *In the event that such purchase is ineffective for any reason with respect to any account receivable,* however the Grantor grants to PhyCor a security interest in such accounts receivable as set forth in this Section 2 ... (emphasis added)

■■ The record indicates that the Security Agreement was amended to show the conditional language. The Service Agreement directly states that PhyCor and

STMC "may not transfer or assign" the non-payment receivables, rather a sale must take place. Additionally, collateral is defined in the contract as "receivables for which payment shall be made." However, the circumstances surrounding the amendment of the Security Agreement was to ensure that the companies were not in violation of the Medicare and Medicaid anti-assignment rules. *See* 42 U.S.C. §§ 1395g(c) & 1395u(b)(6); 42 C.F.R. §§ 424.70–90. The non-purchase receivables consist mostly of the payments received through Medicare and Medicaid. PhyCor argues that the Texas statute governs the meaning of the disputed terms. Tex.Bus. & Comm.Code § 9.204(b).

Regardless of the result under state corporate law, federal law governs cases involving rights of the United States arising under nationwide federal programs. *U.S. v. Vernon Home Health, Inc.* 21 F.3d 693, 695 (citing *U.S. v. Kimbell Foods,* 440 U.S. 715, 726, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979)). Texas courts have indicated that if a contract is susceptible of two constructions, only one of which render the agreement valid and effective, that construction which render the contract valid will be adopted. *Wood Motor Co. v. Nebel,* 150 Tex. 86, 238 S.W.2d 181, 183 (1951). The language of the Financing Statement is undisputed. However, federal law preempts state law in determining the scope of the anti-assignment statute. Construing the language as PhyCor suggests, would violate the Medicare and Medicaid anti-assignment rules. Therefore, in the interests of justice, the Court must recognize the language as conditional.

It is undisputed that PhyCor has not attempted to, nor been denied the opportunity to, purchase the interim receivables. PhyCor has not met the burden of proving performance of the condition precedent. For the above stated reasons, PhyCor owns no interest in the receivables that are not yet part of its defined "collateral" and the receivables cannot become

collateral PhyCor fulfills the condition precedent. Therefore, summary judgment is proper as it relates to the non-purchased receivables for February 2000.

**(B) Existing Non–Purchased Receivables**

STMC has requested that the Court release the non-purchased receivables occurring after March 1, 2000, in the court registry from the obligation contained in paragraph 2 of the Agreed Order. In the Agreed Order, PhyCor "expressly disclaimed any security interest or ownership rights in the cash collections therefrom [STMC Receivables]." The Court has determined that STMC owns the February interim receivables free and clear from PhyCor because of PhyCor's failure to meet the conditions precedent, and the non-purchased receivables must be able to go through a purchased sale before PhyCor can obtain them. To afford PhyCor the opportunity to fulfill the condition precedent, the funds must be retained in the Court's registry. However, if PhyCor does not purchase the funds within the requisite time, pursuant to the Security Agreement, STMC may obtain the proceeds from the Court's registry.

**VII. CONCLUSION**

In light of the foregoing discussion, it is the conclusion of the Court that STMC's Motion for Partial Summary Judgment shall be GRANTED; PhyCor's Cross–Motion for Partial Summary Judgment shall be DENIED. Consistent with this opinion, all funds related to STMC's request that do not fulfill the condition precedent, shall be RELEASED and STMC is to prepare an appropriate Order to Release Funds for the Court's signature.

It is so Ordered.