NUMBER 13-01-736-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI
-EDINBURG


 


UNION GAS CORP., Appellant,

 

v.



PRISCILLA DORNBURG, ET AL., Appellees.

 


On appeal from the 267th District Court 


of Victoria County, Texas.


 


MEMORANDUM OPINION



Before Justices Hinojosa, Rodriguez and Wittig (1)



Opinion by Justice Wittig




 This memorandum opinion is the third of seven related cases. The factual
background, the standard of review, and a majority of the issues are addressed in our prior
opinion, Union Gas Corp. v. Gisler, No. 13-01-00734-CV, 2003 Tex. App. LEXIS 7581
(Corpus Christi Aug. 29, 2003, no pet. h.). In this case, Union Gas Corporation (Union)
appeals the summary judgment granted in favor of appellees, Priscilla Dornburg and
Garland Dentler. Union asserts that the trial court entered contradictory summary
judgments on essentially the same though separate contract language. It argues appellees
should not have been awarded royalties accruing before August 7, 2000, the recordation
date of the unit designation. (2) We agree with Union that the trial court erred in awarding
unit royalties before August 7, 2000. Thus, we reverse and render only the portion of the
summary judgment dealing with this issue, and affirm the balance of the trial court's
judgment. We have previously addressed Union's other issues relating to severance,
interpleader, and its motion to dismiss. We adopt those holdings from Gisler, 2003 Tex.
App. LEXIS 7581, at *2, *20, *29, and overrule these issues. While Union complained of
the attorney's fee award in the Gisler case, it did not complain of the attorney's fee award
to appellees. Therefore, this issue is waived. Tex. R. App. P. 38.1(e), (h).

I

 Union contracted with appellees and various adjoining land owners for multiple oil
and gas leases beginning in 1999. These leases contained pooling provisions allowing for
unitized production of gas in ten adjacent tracts. The designation for the pooling of the
Watts-Gisler #1 well was recorded August 7, 2000. This is the only well in the unit, and it
began production on March 27, 2000. The well is located upon land owned by Jimmie B.
Gisler, Jenell Gisler, Ralph K. Gisler, and Doris Gisler. While the Gislers became part of
the pooled unit, they claimed entitlement to 100% of the royalties from the date of first
production until the pooling designation was recorded on August 7, 2000. We agreed with
the Gislers and so held in the prior related case. Gisler, 2003 Tex. App. LEXIS 7581, at
*13.

 Union brought appellees into the initial litigation by way of a third-party action and
interpleader. Appellees filed a general denial and, by their third amended counterclaim,
sought a declaration that they were due royalties from first production on March 27, 2000,
and that they were each entitled to a unit royalty of .0249120. In the alternative, appellees
contended they were entitled to negligence damages for drainage. Appellees filed a
motion for summary judgment on the contract and inception-of-royalty issues. Appellees'
motion was granted by the trial court and is the genesis of this appeal.

 The Gislers' lease provided that the unit designation was not effective until its
recordation (August). While appellees' lease also had a provision that the lease's pooling
option was effective on the date of recordation, the unit designation itself provided that the
pooling was retroactively effective to the date of first production (March). The trial court
agreed with appellees and granted their motion for summary judgment. Union appealed. 
As we noted in our first opinion, appellees did not join the Gislers' claim for bad faith
pooling and other claims, although they did assert a separate damage claim, not raised in
the summary judgment proceeding and thus not addressed in this appeal. The trial court
severed essentially all the contract claims of the various parties and left the tort claims of
the Gislers and appellees to be adjudicated at a later date.

 II

 Union filed essentially the same briefs in the seven related cases. We adopt our
ruling on Union's issues two, four, five, and six relating to the Gislers' claim to the initial
royalties, interpleader, severance, and Union's motion to dismiss. Gisler, 2003 Tex. App.
LEXIS 7581, at *2, *13, *20, *29. We now address Union's issues relating to these
appellees.

 III

 Union makes the following arguments. If, as we have previously held, the pooling
is not effective until the August 7 recordation date, then there is no unit production until that
time. The same effective date should be applied to all leases. There is only one well, and,
while that well began production in March, there was no producing well in the pooled unit
until August. Thus, no royalty payments were due the appellees until August 7th. In short,
appellees were not entitled to royalties until the unit was properly pooled. Furthermore, the
court's construction of the language of the various leases must be consistent, and the
same effective pooling date should be applied to all leases. Union cites Sauder v. Frye,
613 S.W.2d 63, 64 (Tex. Civ. App.-Fort Worth 1981, no writ). Sauder held: 

We find that the provision in the Frye lease evidenced the intent of the
parties that for unitization to be effective one of its required conditions was
the recordation of the designation of pooling. Only at that point would the
unitization validly come into being under the terms of the lease.

Id. 

 Union further argues that the unit designation language relied on by appellees was
not a contract or an offer; there was no new consideration; and the designation was just
that, a designation. The unit designation language provided in the last paragraph: "IN
WITNESS WHEREOF, this instrument is executed this 29th day of July, 2000 but effective
as of the date of first production from the Union Gas Operating Company, Watts-Gisler #1
well." This contrasts with appellees' lease provision that gave Union the right to pool. The
lease provided the pooling unit was effective upon recordation. 

 Appellees counter that Union is estopped from raising this argument on appeal
because in its third-party claim it sought to have the unit retroactively effective to the March
date of first production. They cite Samedan Oil Corp. v. Louis Dreyfus Natural Gas Corp.,
52 S.W.3d 788 (Tex. App.-Eastland 2001, pet. denied). That case held that because
Samedan had consistently asserted that a Colorado court's arbitration award was a final
judgment disposing of all claims and issues, it was estopped to later assert otherwise. Id.
at 793. Appellees also cite Austin Transportation Study Policy Advisory Committee v.
Sierra Club, 843 S.W.2d 683, 689 (Tex. App.-Austin 1992, writ denied) (party may not
request that the trial court take a particular action and then complain on appeal that the
court committed error in granting its request). 

 While appellees' argument is partially correct that Union made this assertion, they
ignore other alternative assertions made by Union. Specifically, Union sought a uniform
determination applicable to all royalty owners. It sought to avoid the competing claims of
the Gislers, appellees, and the other lessors in the unit. In its supplemental counterclaim
and third-party interpleader claim, Union asserted it was liable for royalties due to some or
all of the other parties. It also delineated the competing claims of the Gislers and other
lessors for the first production. Specifically, Union sought relief from having to pay royalties
twice and to pay inconsistent claims. Thus, Union did not consistently plead solely for
retroactive application of royalty payments, and Samedan is not controlling. See Samedan
Oil Corp., 52 S.W.3d at 793. Similarly, the argument under Sierra Club fails. See Sierra
Club, 843 S.W.2d at 689. 

 Appellees next argue that their lease is effective notwithstanding other leases. 
Appellees' lease provides: "[Union] shall file for record . . . an instrument describing and
designating the pooled acreage as a pooled unit; and upon such recordation the unit shall
be effective as to [appellees and Union] . . . irrespective of whether or not the unit is
likewise effective as to all other owners." The lease further provides the pooled unit may
include land or leases on which a well is capable of producing gas or has been completed
and regardless of whether the production was secured before or after execution of the
lease or pooling designation. The entire acreage constituting the unit shall be treated as
if it were included in appellees' lease, except for the payment of royalties.

 Appellees further assert, based on their lease, that the unit is effective as to them
regardless of whether it is effective to the other lessors. This argument cannot stand,
however, if the unit was not effectively pooled until recordation, as we discuss below.

 Finally, appellees argue ratification. Because Union had a common law obligation
to protect from drainage, Union's unilateral pooling designation filed August 7 and stated
to be retroactive, was an appropriate response to this duty and claim by appellees. (3) The
cited claim by appellees was not filed until April 16, 2001, well after the August 7, 2000
recordation. Other than the reference to the April 16 claim, appellees fail to cite to any
record proof of the alleged ratification. See Tex. R. App. P. 38.1 (h). Further, this theory
was not advanced in their summary judgment motion and accordingly is not properly before
us. See Tex. R. Civ. P. 166a(c).

 IV

 Absent express authority, a lessee has no power to pool the lessor's interests with
the interests of others. (4) Southeastern Pipe Line Co. v. Tichacek, 997 S.W.2d 166, 170
(Tex. 1999); Browning Oil Co., Inc. v. Luecke, 38 S.W.3d 625, 640 (Tex. App.-Austin
2000, pet. denied). "For pooling to be valid, it must be done in accordance with the method
and purposes specified in the lease." Tichacek, 997 S.W.2d at 170. "The lessors' land
may be pooled only to the extent stipulated in the lease." Jones v. Killingsworth, 403
S.W.2d 325, 327 (Tex. 1965). A contract is not ambiguous if it can be given a certain or
definite legal meaning or interpretation. Columbia Gas Transmission Corp. v. New Ulm
Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996); Friendswood Dev. Co. v. McDade + Co., 926
S.W.2d 280, 282 (Tex. 1996). 

 In Luecke, the Austin appeals court succinctly articulated rules for oil and gas
contract application of pooling clauses. Luecke, 38 S.W.3d at 640. Luecke observed:

 1. Lessee's authority to pool is derived solely from the terms of the
lease; a lessee is without such power absent express authority.

 2. Parties to an oil and gas lease must strictly comply with its terms.

 3. An oil and gas lease is a contract to be interpreted as such.

 4. In construing an unambiguous oil and gas lease, the court must
determine the intention of the parties as expressed in the lease.

 5. The writing alone expresses the intent of the parties. Thus, the court
will enforce an unambiguous lease as written.

Id. 

 From secondary sources, we also are informed that most pooling clauses now
affirmatively require the unitization declaration to be filed of record. Cummings: "Pooling
Issues-Avoiding Pitfalls," 1995 State Bar of Texas Advanced Oil, Gas & Mineral Law
Course. If the pooling clause requires recordation, it is not effective until actually filed in
the appropriate county; execution and acknowledgment is insufficient. Id. 

 Union did not pool in accordance with its lease with the Gislers, insofar as the
effective inception date is concerned. Union cannot escape its prior and material
contractual obligations to the Gislers. As Union admits, it must comply with the leases in
forming the unit. See Tichacek, 997 S.W.2d at 170. The Gislers' lease was the situs of
Watts-Gisler #1 well. The pooling rights of the parties emanated from the various leases. 
See id.; Killingsworth, 403 S.W.2d at 327-28; Luecke, 38 S.W.3d at 640. Because the unit
was not effectively pooled until the August 7 recordation date, there was no unit production
until that time. See Gisler, 2003 Tex. App. LEXIS 7581, at *10-*13. In other words,
although there was production from March 27 on the Gislers' lease, there was no
producing well in the pooled unit until August 7. We also agree with Union that the legal
construction of the various leases and unit designation should be consistent. We
accordingly apply the rationale of Sauder that the leases evidence the intent of the parties
that unitization be effective upon the recordation. See Sauder, 613 S.W.2d at 64. "Only
at that point would the unitization validly come into being under the terms of the lease." 
Id. 

 V

 In appellees' motion for summary judgment, they also contended that Dornburg and
Dentler were each entitled to a unit royalty of .0249120. Union does not dispute the
percentage of unit royalty interest, as such. It only indirectly disputed this portion of the
summary judgment in its interpleader and severance arguments. As stated, we overrule
these arguments. See Gisler, 2003 Tex. App. LEXIS 7581, at *20, *29. Union did not
appeal the award of attorney's fees in this case.

VI

 The judgment of the trial court is affirmed in all aspects save the inception date of
appellees' rights to royalties. That date is August 7, 2000. The portion of the judgment
awarding royalties before August 7, 2000 is reversed and rendered. The remainder of the
judgment is affirmed, including appellees' entitlement to their proportional royalties
beginning August 7, 2000, attorney's fees, twelve percent interest, and costs. 

 

 DON WITTIG

 Justice

Opinion delivered and filed

this 30th day of October, 2003.
1. Retired Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of
Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1998). 
2. The argument was in the alternative. If the Gislers received 100% of the royalties before August
7, 2000, then Dornburg/Dentler and other appellees in the related cases, were not entitled to their unit share
in the same time period.
3. We assume, without deciding, that appellees' drainage claim, was severed.
4. The Texas Supreme Court notes this authority is usually found in the lease's pooling clause.
Southeastern Pipe Line Co. v. Tichacek, 997 S.W.2d 166, 170 (Tex. 1999).