Willie Thornton v. State of Texas
















IN THE
TENTH COURT OF APPEALS
 

No. 10-00-156-CV

     ROBERT BLACK,
                                                                         Appellant
     v.

     DELTA AIRLINES, INC., AL PEREZ, 
     AND ABE HADDAD D/B/A SMITH
     TRAVEL & LIMOUSINE
                                                                         Appellees
 

From the 192nd District Court
Dallas County, Texas
Trial Court # F96-06320-K
                                                                                                                
                                                                                                         
O P I N I O N 
                                                                                                                

      This is an appeal from two take nothing summary judgment orders entered against Robert
Black [“Black”], a Dallas resident, in connection with his suit for damages arising from a planned
airline flight to Las Vegas from Dallas/Fort Worth International Airport. The summary judgment
motions were filed pursuant to Tex. R. Civ. P. 166a(b). Delta Airlines, Inc. [“Delta”], Al Perez
[“Perez”], and Abe Haddad d/b/a Smith Travel & Limousine [“Smith Travel”] were defendants
in the court below. We will reverse the district court’s summary judgment orders and remand the
case for trial.
I. Factual Background
      On June 23, 1995, Black purchased two airline tickets for seats on Delta Airlines for an
afternoon flight to Las Vegas, Nevada. According to Black, he intended the trip to be a surprise
present for his wife, Mary. Black hoped that the trip would help repair his damaged marriage and,
to that end, he attempted to ensure a romantic weekend by arranging for, among other things,
first-class airline seats, a leisurely dinner, and tickets to a Tom Jones concert on the evening of
their arrival. Viewed in the light most favorable to Black, the nonmovant in the district court, the
record reflects the following events:
      Black purchased the airline tickets on June 23, 1995 from Smith Travel, a Dallas travel
agency. The cost for the two, round-trip, first-class tickets was $2,384, an amount Black charged
on a credit card. The written invoices appellant received from Smith Travel reflected two first-class reservations on Delta Airlines Flight 661 to Las Vegas, scheduled to depart that same day,
June 23, at 3:18 p.m. The invoices also reflected the details of a scheduled return flight to Dallas
on June 25. Close inspection of the invoices shows seat assignments for “Robert Black” for both
directions, however, Mary Black’s invoice reflects a seat assignment only for the return flight. 
Nevertheless, her invoice reflects first-class reservations both directions. According to Black,
Melissa Shinn, the manager of Smith Travel, personally represented to him that both tickets were
confirmed for first-class travel. Two round-trip tickets accompanied the itinerary/invoices. Each
ticket indicates, “Issued by DELTA AIRLINES INC,” and reflects first-class travel for each of
the Blacks on flight 661 to Las Vegas, and flight 1800 on the return trip. 
      The Blacks arrived at the gate prior to departure and informed the gate agent that they desired
to sit together. The agent said, “I’ll see what I can do.” As the plane boarded, a Delta
supervisor, Al Perez, appeared and told the Blacks that there was a problem with their reservations
and that one of the tickets was, in fact, not confirmed for first-class travel. According to Delta,
Black’s ticket was confirmed for first-class, but the ticket for Mary was merely a confirmed ticket
for a seat in coach, which had been placed on a “priority wait list for first-class.” Because first-class was completely filled, Mary would have to fly in coach. Perez spoke on the phone to Shinn,
then told the Blacks that Shinn’s computer indicated that the tickets were confirmed for first-class. 
Perez told them that Delta’s computer indicated Mary’s ticket was not confirmed. The Blacks
presented summary judgment evidence that this situation is routinely encountered by Delta and that
hundreds of times passengers arrive at the gate with confirmed tickets that are somehow not
reflected in the SABRE reservation system used by Delta. In response to the Blacks plight, several
alternatives were offered by Perez: the Blacks could sit together in coach; fly separately, one in
coach, one in first-class; or take a later flight. Black presented evidence that the offered
alternatives were unacceptable given the purpose of the trip: a first-class romantic flight, and the
tight schedule for attending already paid-for functions in Las Vegas, including the Tom Jones
concert that evening. 
      After rejecting Delta’s proposed alternatives Black made other flight arrangements. At a cost
of $13,150, Black hired a private air carrier to transport them to Las Vegas.
II. Procedural Background
      Black sued Delta under theories of breach of contract, intentional misrepresentation, and
negligent misrepresentation. He sued Haddad, in his capacity as owner of Smith Travel, under
theories of breach of contract, intentional misrepresentation, negligent misrepresentation,
violations of the Texas Deceptive Trade Practices Act,


 and negligence. Black sued Perez, the
Delta flight supervisor, for intentional misrepresentation and negligent misrepresentation.



      Delta and Perez moved for summary judgment on four grounds: (1) preemption under the
Airline Deregulation Act of 1978 [“ADA”];


 (2) lack of causation; (3) avoidable consequences;
and (4) Smith Travel’s lack of an agency relationship with Delta. That motion for summary was
granted. Haddad moved for summary judgment on similar grounds, save for the agency claim. 
In addition, Haddad alleged that summary judgment was proper because he was not the owner of
Smith Travel at the time Black purchased the tickets. His motion for summary judgment was also
granted.
III. Discussion
      A. Standard of review
      In a summary judgment case, the issue on appeal is whether the movant met his summary
judgment burden by establishing that no genuine issue of material fact exists and that the movant
is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); KPMG Peat Marwick v.
Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999); City of Houston v. Clear
Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979). The burden of proof is on the movant, and
all doubts about the existence of a genuine issue of material fact are resolved against the movant. 
Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999); Friendswood Dev. Co. v.
McDade & Co., 926 S.W.2d 280, 282 (Tex. 1996); Great Am. Reserve Ins. Co. v. San Antonio
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965). Therefore, we must view the evidence
and its reasonable inferences in the light most favorable to the nonmovant. Great Am., 391
S.W.2d at 47.
      In deciding whether there is a material fact issue precluding summary judgment, all conflicts
in the evidence are disregarded and the evidence favorable to the nonmovant is accepted as true. 
Rhone-Poulenc, 997 S.W.2d at 223; Harwell v. State Farm Mut. Auto Ins. Co., 896 S.W.2d 170,
173 (Tex. 1995). Evidence that favors the movant's position will not be considered unless it is
uncontroverted. Great Am., 391 S.W.2d at 47.
      The summary judgment will be affirmed only if the record establishes that the movant has
conclusively proved all essential elements of the movant's cause of action or defense as a matter
of law. Clear Creek Basin, 589 S.W.2d at 678. Where, as here, the trial court grants summary
judgment in a general order without specifying the ground or grounds relied on for its ruling,
summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. 
Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995). 
      B. Preemption Analysis
      We begin by considering whether the ADA prevents Black from advancing his causes of
action in state court. Under the supremacy clause of the United States Constitution, federal law
may preempt state law either by express provision, by implication, or by a conflict between federal
and state law. N.Y. Conference of Blue Cross v. Travelers Ins., 514 U.S. 645, 653-55, 115 S.Ct.
1671, 1676, 131 L.Ed.2d 695 (1995), see also U.S. Const. Art. VI. The manifest intent of the
ADA’s preemption provision is to “ensure that the States would not undo federal deregulation with
regulation of their own.” American Airlines v. Wolens, 513 U.S. 219, 222, 115 S.Ct. 817, 821,
130 L.Ed.2d 715 (1995) (quoting Morales v. TransWorld Airlines, 504 U.S. at 378, 112 S.Ct. at
2034); see also Legend Airlines v. City of Fort Worth, 23 S.W.3d 83 (Tex. App.—Fort Worth
2000, pet. denied). The ADA prohibits States from “enact[ing] or enforc[ing] any law . . .
relating to [air carrier] rates, routes, or services.” 49 U.S.C. § 40101, et seq. (1995).


 This
language has been interpreted by the United States Supreme Court as preempting, and thus
barring, state-imposed regulations of air carriers. American Airlines, Inc. v. Wolens, 513 U.S.
at 222. Claims for breach of contract,


 however, do not constitute “state imposed regulations,”
where parties seek redress in state court for the violation of contract terms set by the parties
themselves. Id. at 232. The specific issues addressed in Wolens involved claims brought in
Illinois state court alleging that American Airlines’ action in changing mileage credits in its
frequent flier program for credits passengers had already accumulated, constituted a breach of
contract and a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
(Consumer Fraud Act), 815 Ill. Comp. Stat. Sec 505/1 et seq. (1992). Id. at 224.
      Because the Illinois Consumer Fraud Act controlled the primary conduct of those parties
falling within its governance, the United States Supreme Court held that the Illinois statute might
be used as a means to guide and police the marketing practices of airlines. Id. at 232. Noting that
the purpose of the Airline Deregulation Act was to prohibit the states from controlling the
selection and design of marketing mechanisms appropriate to the furnishing of air transportation
services, the Supreme Court held the ADA preempted the plaintiff’s claims under the Illinois
Consumer Fraud Act. Id. at 228-232.



      A different result was reached by the high court on the question of whether breach of contract
claims are preempted. Reasoning that the Airline Deregulation Act was not intended to regulate
contracts between individual parties, the court held it would not read the preemption clause, 49
U.S.C.S. § 1305(a)(1), to “shelter airlines from suits alleging no violation of state-imposed
obligations, but seeking recovery solely for the airline’s alleged breach of its own, self-imposed
undertakings,” and ruled breach of contract causes of action were not subject to federal
preemption. Id. at 229, 115 S.Ct. at 824. The Supreme Court clarified its ruling by noting the
disparate treatment of statutory causes of action as opposed to those arising out of contractual
agreements:
This distinction between what the State dictates and what the airline itself undertakes
confines courts, in breach of contract actions, to the parties’ bargain, with no
enlargement or enhancement based on state laws or policies external to the agreement.

Id. at 233, 115 S.Ct. at 232 (footnote omitted).

      A rote application of the ruling in Wolens would require us to hold that Black’s breach of
contract claim against Delta is permissible because it involves alleged violations of “the parties
bargain,” rather than state laws external to the agreement. Nevertheless, we cannot overlook the
fact that the alleged contractual violation at issue in this appeal involves a common condition
unique to the airline industry–the failure to seat an allegedly confirmed ticket holder because of
overbooking–and that unlike the frequent-flier agreements at issue in Wolens, specific federal
regulations govern compensation for air passengers who are involuntarily prevented from boarding
a flight due to overbooking. See 14 C.F.R. §§ 250.4, 250.5, 250.6 (1984). 
      In other contexts, the Supreme Court has held that when the statute is silent or ambiguous
courts should turn to agency regulations for clarification. West v. Northwest Airlines, Inc., 99
F.2d 148 (9th Cir. 1993). If Congress has explicitly left a gap for the agency to fill, there is an
express delegation of authority to the agency to provide a specific provision of the statute by
regulation. Federal regulations provide for compensation for passengers whose confirmed
reservations are not honored, without requiring that the passenger prove economic damages or
physical injury. 14 C.F.R. §§ 250.4, 250.5, 250.6 (1984). The regulations provide for a
maximum compensation of $400, which is halved if the carrier provides alternate transportation
that is planned to arrive at the passenger’s next destination within a designated time of the arrival
time of the original flight from which the passenger is bumped for flights within the United States
and its territories. Significantly, 14 C.F.R. § 250.2a states that the policy behind its creation is
to ensure that every air carrier ensure that the smallest practicable number of persons holding
confirmed reserved space on flights are denied boarding involuntarily. The regulations provide
a uniform system of compensation that may be enforced by the ticket holders, or declined by the
ticket holders, at their discretion, in favor of damages to be decided “in a court of law or in some
other manner.” See 14 C.F.R. § 250.9(b) (1984). By Black’s own admission Delta attempted
to placate him with alternatives, but none were acceptable. 
      As noted above the regulations provide that the “bumped passenger has the right to decline
the compensation provided for in the regulation and seek to recover damages in a court of law.” 
See 14 C.F.R § 250.10 (1984) (Emphasis added). Delta argues Black was not bumped because
she was offered $60 compensation for sitting in the flight’s coach cabin, rather than in the first
class cabin. According to Delta, all other remedies are preempted because § 250.6, provides that,
among other exceptions to eligibility for “denied boarding compensation,” are passengers
“...seated in a section for which a lower fare is charged shall be entitled to an appropriate refund.” 
Black produced summary judgment evidence showing she held a confirmed, first-class ticket. 
Delta produced summary judgment evidence showing the ticket was confirmed only for coach. 
As noted above, settled summary judgment law requires us to construe the evidence in the light
most favorable to Black, the nonmovant. Under this standard, we assume that Black was denied
her “confirmed reserved space”


 on Flight 661 due to airline overbooking. Addressing Delta’s
claim that Black was entitled to only $60 because she was offered seating in coach, we note that
14 C.F.R. § 250.6 does not specifically preempt Black’s claim. It merely lists Black’s situation
(denied first class boarding with an offer for coach boarding) as an “exception” to “eligibility for
denied boarding compensation.” We therefore agree with Delta’s contention that, because Mary
was offered coach seating, Black would not be entitled to demand the federally required damages
available to “bumped” passengers choosing compensation under the regulations of “200 percent
of the sum of the values of the passenger’s remaining flight coupons up to the passenger’s next
stopover, or if none, to the passenger’s final destination, with a maximum of $400.” 14 C.F.R.
§ 250.5. However, to say the Black cannot claim damages outside the regulation’s compensation
system would be incorrect. In fact, nothing in the code of federal regulations bars anyone from
foregoing regulation remedies and seeking damages in state court. 14 C.F.R. § 250.9 (1984)
requires the airlines to inform passengers paid compensation that “[a]cceptance of the
compensation may relieve (name of air carrier) from any further liability to the passenger caused
by its failure to honor the confirmed reservation. However, the passenger may decline the
payment and seek to recover damages in a court of law or in some other manner.” (Emphasis
added). Because federal airline regulations allow passengers whose airline reservations are not
honored due to overbooking to seek recovery for damages “in a court of law or in some other
manner,” we hold that Black’s breach of contract cause of action against Delta is not preempted
by the ADA. Moreover, even if Delta were correct in its contention that passengers in Black’s
situation can recover only an “appropriate refund” for involuntary seating in coach while holding
a reserved, first class ticket, Delta has not shown that the $60 tendered to Black was
“appropriate.”
      Federal regulations provide that a person offered accommodations in a section of the aircraft
other than as specified on their ticket gives up his or her right to compensation under scheme
available in the regulations, but no such waiver is stated for persons who choose the “passenger
option” of “recovering damages in a court of law.” See 14 C.F.R. § 250.9 (1984). We
additionally note that Black contends no Delta employee requested other first-class passengers
holding reservations to volunteer for a payment of Delta’s choosing in return for sitting in coach. 
If Mary’s ticket was confirmed for first-class and Delta did not request volunteers from other
ticketed passengers to give up their seat assignment in exchange for an airline incentive, Delta
itself was in violation of the very federal regulations it contends foreclose Black from recovering
in a court of law. 14 C.F.R. § 250.9 (1984) provides:
Written explanation of denied boarding compensation and boarding priorities.
 
(a) Every carrier shall furnish passengers who are denied boarding involuntarily from
flights on which they hold confirmed reserved space immediately after they are denied
boarding occurs, a written statement explaining the terms, conditions, and limitations of
denied boarding compensation. . .. 

            (b) The statement shall read as follows:
. . .
If a flight is oversold (more passengers hold confirmed reservations than there are
seats available), no one may be denied boarding against his or her will until airline
personnel first ask for volunteers who will give up their reservation willingly, in
exchange for a payment of the airline’s choosing. If there are not enough volunteers,
other passengers may be denied boarding involuntarily in accordance with the following
boarding priority of (name of air carrier): (In this space carrier inserts its boarding
priority rules or a summary thereof, in a manner to be understandable to the average
passenger). 

      To be sure, Delta offered summary judgment evidence that Al Perez did seek volunteers from
other first-class passengers and that, in fact, he offered the generous incentive of an additional
round-trip ticket to anywhere in the United States to any first-class passenger who would give up
their seat to Mary and agree to fly on the same flight in coach. According to Perez, only after no
passenger volunteered did he deny Mary first-class seating. However, other evidence suggested
that was not true. Every reasonable inference must be indulged in favor of the non-movant and
every doubts resolved in its favor. See, e.g., Nixon v. Mr. Property Management Co., 690
S.W.2d 546, 548-49 (Tex. 1985). Black offered summary judgment evidence that he and his wife
arrived at the departure gate between one hour and forty-five minutes in advance of boarding, that
he did not witness Perez seeking volunteers from the other first-class passengers, and that, in fact,
the flight was already in the process of boarding when Mary was first informed that her
reservation for first-class would not be honored. Significantly, Black also averred that Perez did
not appear at the gate until the gate agents were in the process of boarding passengers for the
flight. It is reasonable to infer that if Perez had asked every first-class passenger to volunteer to
give up their ticket, he would have done so over the gate public address system. Because Black
was present when Perez arrived at the gate and did not witness Perez make any offer seeking
volunteers from the other first-class passengers, in viewing the evidence in the light favorable to
Black, a reasonable inference is that Delta did not seek volunteers before denying Mary first-class
seating.
      Whether Black’s claims against Delta for intentional and negligent misrepresentation


 are
preempted by the ADA presents a closer question. In both Morales and Wolens, the United State’s
Supreme Court held that causes of action based on state consumer protection statutes are
preempted under the ADA. The Texas Supreme Court accurately predicted in Continental Airlines
v. Kiefer that this very question would one day be presented to a reviewing court:
An action for negligent misrepresentation might be argued to be indistinguishable
from the statutory consumer protection actions [held preempted] in Morales and
Wolens. Strict products liability could be argued to embody State policies to a
degree prohibited by ADA regulation policy. These are but two examples. We need
not address these issues here but leave them for “a closer working out” in future
cases. We hold only that the ADA does not preempt common-law personal injury
cases negligence claims against air carriers, subject to the reservations we have
expressed as to damages.

Continental Airlines v. Kiefer, 920 S.W.2d 274, 283 (Tex. 1996).

      We now proceed to the “closer working out,” anticipated in Kiefer. We begin by noting that
while Black seeks relief under the Texas consumer protection law corollary to the state laws held
preempted by the ADA in Morales and Wolens–the Texas Deceptive Trade Practices Act


–he does
so only in relation to his claims against Haddad, the owner of the travel agency. A claim against
Delta for alleged violations of the Deceptive Trade Practices Act would be preempted by the
ADA, in order to prevent our state legislature from controlling, through consumer protection acts,
“the design and implementation of marketing mechanisms appropriate to the furnishing of air
transportation services.” See American Airlines v. Wolens, 513 U.S. 219, 115 S.Ct. 817, 130
L.Ed.2d 715 (1995); See also Shupe v. American Airlines, Inc., 893 S.W.2d 305, 307-308 (Tex.
App.—Fort Worth 1995), affirmed 920 S.W.2d 274. However, the theories of intentional and
negligent misrepresentation actually pleaded by Black do not turn on any requirement imposed on
Delta by any Texas legislative body. Instead they turn on representations alleged by Black to have
been personally made to him by Delta through Perez, and Delta’s alleged agent, Haddad. This
makes the misrepresentation causes of action more similar to the breach of contract claims
historically held not to be preempted by the ADA, than the consumer protection act causes of
action determined by courts to be preempted, because the misrepresentation claims involve actions
between the parties in connection with “self-imposed undertakings,” a factor deemed significant
by the Supreme Court in Wolens. cite. For this reason, we hold that Black’s causes of action
against Delta for intentional and negligent misrepresentation are not preempted by the ADA.
      Because Delta flight supervisor Al Perez’s summary judgment claims are based on the same
grounds advanced by Delta, including the preemption claims, we find that Black’s causes of action
against Perez for intentional and negligent misrepresentation are also not preempted by the ADA. 
Our disposition of the preemption issue against Delta and Perez is similar, except that we must
also determine whether travel agencies are covered under the ADA.
      Haddad maintains that as a travel agency marketing airline tickets, Black’s cause of action
against his business for alleged violations of the Texas Deceptive Trade Practices Act is preempted
by the ADA for the same reason such a cause of action would not be permitted against an airline.


 
Haddad specifically argues that the ADA preempts claims, “directly related to services provided
by an air carrier and those that make reservations for service for an air carrier.” We disagree. 
The ADA provides that no state “shall enact or enforce any law, rule, regulation, standard, or
other provision having the force and effect of law relating to rates, routes, or services of any air
carrier.” 49 U.S.C. § 41713(b)(1) (1994) (emphasis added). The burden of demonstrating
preemption is on the party who asserts it. See Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 255,
104 S.Ct. 615, 78 L.Ed.2d 443 (1984). Haddad has not demonstrated on appeal, nor in the court
below, a congressional intent to shield travel agencies from state consumer protection laws through
the ADA. We agree with Black’s assertion that his claims against Haddad involve privately-ordered undertakings that affect the airlines, if at all, in too tenuous, remote, or peripheral a
manner to have preemptive effect. See Morales v. Trans World Airlines, 504 U.S. at 390. We
therefore hold that Black’s causes of action against Haddad, including the claimed violation of the
Texas Deceptive Trade Practices Act, are not preempted by the ADA.
      C. Causation
      Summary judgment was also sought on grounds that the damages Black suffered were not
caused by any wrongdoing on the part of any appellee. The specific argument made by Delta,
Perez, and Haddad in their summary judgment motion in the district court follows:
The undisputed evidence shows that plaintiff and his wife could have traveled on flight
661, with one passenger in first-class and the other in coach. Even if Mrs. Black was
wrongfully denied a seat in first-class, the ultimate result of that alleged wrongdoing is
that Mrs. Black would sit in coach for the 2½ hour flight, just like 185 other passengers
on this particular Boeing 767. Because the Blacks were not denied transportation on
flight 661, alternate flight arrangements were not necessary. . . . At most, the Blacks
would have suffered “mental anguish” from the moral, social, or marital humiliation of
travel in coach rather than first-class. As the Blacks are probably aware, of course, such
a claim would not have a significant legal value.

Put another way, the movants contend that the Blacks were, as a matter of law, required to fly on
Flight 661 to avoid having their claim dismissed on grounds of causation. We do not agree. 
Although the economic damages allegedly suffered by Black when he chartered a private jet to fly
him to Las Vegas to ensure his arrival for dinner and the Tom Jones concert were substantial, we
cannot say, as a matter of law, that a rational jury could not find that Black suffered at least some
damage as a result of the appellee’s conduct. “[T]he question of causation (foreseeability) which
controls liability should be determined from the facts and circumstances of each particular case,
and except where reasonable minds cannot differ, the issue is one for the jury.” Strakos v.
Gehring, 360 S.W.2d 787, 792 (Tex. 1962). We hold that there is at least some evidence that the
allegedly improper conduct of the defendants caused Black damages. 
      D. Avoidable Consequences
      Delta, Perez and Haddad, contend that Black could have avoided the damages he allegedly
suffered if he had mitigated his damages through other available travel alternatives. As a general
rule, whether a party has mitigated his damages is a question of fact reserved to the fact finder at
trial. Walker v. Salt Flat Water Co., 128 Tex. 140, 96 S.W.2d 231, 233 (Tex. 1936). Black
presented evidence that he could not take a later Delta flight to Las Vegas because his already
scheduled post-arrival plans, including pre-purchased tickets to the Tom Jones concert, would not
permit a later arrival. He also presented evidence that sitting in coach would conflict with the
reason for the trip: a demonstration, through first-class accommodations, of his love for his wife
and a desire to strengthen his weakening marriage. Whether Black could have avoided the expense
of a privately chartered jet is an issue we believe is best left to the trier of fact. Appellate courts
are particularly ill-equipped to determine, as a matter of law, whether particular actions
undertaken to advance interests in “affairs of the heart,” such as Black’s stated motivation here,
are reasonable. Such issues are better left to the trier of fact to resolve. We therefore hold that
summary judgment in favor of appellees is not proper under the theory of “avoidable
consequences.”
      E. Agency
      Delta and Perez contend that summary judgment was appropriate because Smith Travel was,
as a matter of law, not acting as their agent at the time Black purchased his tickets. In other
words, Delta and Perez claim that they were not parties to the travel contract made between Black
and Smith Travel. We hold that like the issues of causation and avoidable consequences, the
agency question presented in this case cannot be resolved as a matter of law. Delta and Perez
moved for summary judgment under this defensive theory based solely on the affidavit of Linda
Wilson, a Reservation Sales Supervisor for Delta. In her affidavit, Wilson averred she has been
employed in Delta’s reservation department for twenty-nine years and that Smith Travel, “like all
U.S. travel agencies,” is authorized by a separate corporation, the Airline Reporting Corporation
(“ARC”), to issue tickets on airlines, but that it does not act as an agent for Delta.


 She also
avers that the ARC does not authorize travel agents to confirm or accept a reservation on an airline
flight and that when requesting reservations on Delta travel agents act exclusively on behalf of the
passenger. In response to Wilson’s affidavit, Black presented the affidavit of James Hargis, a
former Delta passenger service agent with twenty five years’ experience. In connection with the
question of agency, Hargis directly contradicted Wilson and stated that “when a travel agent
issues a ticket, the travel agent acts on behalf of the air carrier, which in this case is Delta.” The
written disclaimer on the travel documents Black received from the travel agency at the time of
ticketing similarly states that Smith Travel & Limousine is acting as an agent for Delta. Under
these disputed facts we hold that Delta and Perez have not established, as a matter of law, that
Smith Travel & Limousine was not acting as Delta’s agent.
      F. Ownership of Smith Travel & Limousine
      Haddad moved for summary judgment on the additional ground that he was not the owner of
Smith Travel & Limousine on June 23, 1995. In support of that claim, Haddad signed an affidavit
in which he averred that on April 1, 1995, he sold Smith Travel & Limousine to a corporation,
Around the Glop, Inc. A written purchase agreement documenting the sale was attached to his
affidavit. In response, Black produced a certified record from the Dallas County Clerk’s Office
certifying Abe Haddad began doing business as “Smith Travel & Limousine,” on June 10, 1991,
and that he was still on record in that same capacity as of August 22, 1997. Black also tendered
an affidavit certified by the office of the Texas Secretary of State indicating that there was no
record of entry indicating any assumed names certificates on file for the corporation known as
Around the Glop, Inc. We hold that because of this conflicting evidence, that it was not
established, as a matter of law, that Abe Haddad was not doing business as Smith Travel &
Limousine on the date Black purchased his airline tickets. 
      Having determined that summary judgment was not proper on any of the grounds advanced
by appellees in the district court, we sustain issues one and two. Given our disposition of those
issues, it is not necessary that we address the remaining issues advanced by Black on appeal. We
reverse the district court’s orders granting summary judgment and remand the case for trial.
 
DAVID L. RICHARDS
                                                                   Justice

Before Justice Vance,
      Justice Gray, and
      Justice Richards (Sitting by Assignment)
            (Justice Gray concurring)
Reversed and Remanded
Opinion delivered and filed January 30, 2002
Do not publish Ordered released for publication on June 26, 2003. See Tex. R. App. P. 47.3(d).
CV25